Timothy  Moshier

*v.*

H. D. Shear.

*Filed at Ottawa November 10, 1881—Rehearing denied March Term, 1882.*

1. Arbitration—*improper conduct of arbitrator as ground to set aside award.* What will be misconduct on the part of a juror, will, as a general rule, be such on the part of an arbitrator. Neither has a right to learn facts, except as brought to his attention on the trial. It is gross misconduct for either to seek evidence or the opinions of others in regard to the case, or anything material to its decision, in another mode.

2. If a party, his agent or attorney, converses with an arbitrator, after his selection, about the facts or merits of the case, an award in such party's favor should be set aside, on the presumption it was obtained by improper influence.

3. Where an arbitrator, after his selection, conversed freely with one who had previously acted as arbitrator between the same parties, in respect to the same subject matter, and whose award had been set aside, and in that conversation the matter in dispute was talked over for several hours, and this fact was not known to the losing party until after the making of the award, it was *held,* this was such misconduct on the part of the arbitrator as to authorize the setting aside of the award, without proof that such conversation had any improper influence with him.

4. The safer rule, when it appears there has been conduct on the part of an arbitrator which has probably resulted perniciously, or was calculated improperly to influence his judgment or bias him in his action, is to set aside the award which such arbitrator joins in making, without proof that his conduct has influenced the other arbitrators associated with him in hearing the case.

Writ of Error to the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Knox county; the Hon. John J. Glenn, Judge, presiding.

Messrs. Lawrence, Campbell & Lawrence, and Messrs. Sanford & Carney, for the plaintiff in error:

Arbitrators should so conduct themselves as to prevent the possibility of improper bias or even suspicion. See Morse on Arbitration, 537.

Like a judge or juror, though his judgment of the pending controversy be altogether a just one, yet he is false to his duty if he exposes his mind to the chance or danger of perversion. *Strong* v. *Strong*, 9 Cush. 570.

There is nothing singular in the conclusion here suggested, of influences in themselves undue, but altogether short of corruption, being so applied to the mind of another as to impair the validity of an act otherwise lawful. *Fox* v. *Hazelton*, 10 Pick. 277; Morse on Arbitration, 106 and 107; *Johnson* v. *Holyoke Water Power Co.* 107 Mass. 473; *Jones* v. *Miller*, 1 Dall. 205.

After a man is chosen arbitrator, he ought not to hear a word of private *ex parte* conversation on the subject with either of the parties. A court can not say it had no influence upon his mind. *Graham* v. *Pence*, 6 Randolph, 537; Morse on Arbitration, 106; Russell on Awards, 205.

The relations of jurors to litigants are like those of arbitrators, and the same duties are enjoined upon each of them, especially as to keeping their minds free from bias, prejudice, partiality and undue influence. *Spurck* v. *Crook*, 19 Ill. 425; *Stampofski* v. *Steffins*, 79 id. 306; *Wheeling Gas Co.* v. *City of Wheeling*, 5 W. Va. 494.

All the arbitrators must act together. The parties are entitled to the arguments, experience and judgment of each at every stage of the proceedings, and their bearing and influence on the minds of the others; and an award will be set aside for the intoxication of any one of them, rendering him incompetent. *Smith* v. *Smith*, 28 Ill. 60; Morse on Arbitration, 209; Russell on Awards, 537.

It is held that to the validity of an award, under a common law submission to three persons, upon a stipulation to abide the determination of any two of them, it is essential that all three be present at the hearing of the parties. *Thompson* v. *Mitchell*, 35 Me. 281; *Rixford et al.* v. *Nye*, 20 Vt. 132; *Bliss* v. *Hay*, 2 Tyler, (Vt.) 304.

And the same ground that will induce a court to set aside a verdict of a jury and grant a new trial, will induce them to vacate an award.  *Williams* v. *Craig*, 1 Dallas, —;  *Bassett's case*, 2 Cow. 458;  *Van Cortland* v. *Underhill,* 17 Johns. 405.

Messrs. McKENZIE & CALKINS, for the defendant in error:

Arbitrators can not be heard to say to what matters they gave weight in their deliberations, what processes of reasoning they followed, or what particular evidence influenced them.  *Denman* v. *Bayless*, 22 Ill. 333;  *Stone* v. *Atwood*, 28 id. 43;  *Pulliam* v. *Pensoneau*, 33 id. 378;  *Claycomb* v. *Butler*, 36 id. 103;  *Tucker* v. *Page*, 69 id. 183;  *Hubbell* v. *Bissell*, 2 Allen, 197;  *Bigelow* v. *Maynard*, 4 Cush. 321;  *Ward* v. *Gould*, 5 Pick. 291;  Morse on Arbitration and Award, 562, 568.

In the absence of affirmative evidence of fraud, partiality or unfairness, which are never presumed, every intendment is in favor of the award.  *Root* v. *Renwich*, 15 Ill. 463;  *Haywood* v. *Harmon*, 17 id. 481.

A previous knowledge of the facts by an arbitrator will not vitiate his award.  *Graves* v. *Fisher*, 15 Me. 54.

While arbitrators must act fairly, their intercourse with the parties upon the subject of the arbitration, untainted with fraud, can not affect their award.  *Flatter* v. *McDermitt*, 25 Ind. 326.

Although one arbitrator may have acted fraudulently and corruptly, if the other two acted honestly the award must stand, (*Plummer* v. *Saunders*, 55 N. H. 28,) so that one is related to the other party.  *Davis* v. *Forchie*, 34 Ala. 107.

Courts will not set aside an award because the compounder misconstrued a deposition, nor because he had in his possession vouchers relative to the case that he had received prior to the time he was chosen.  *Bird* v. *Laycock*, 7 La. Ann. 171.

The court should not set aside the award, and as to acts held not such misconduct as to justify setting the same

aside, counsel cited many other cases, among which are *Fisher* v. *Towner*, 14 Conn. 26; *Wheeling Gas Co.* v. *City of Wheeling*, 5 W. Va. 492; *Herrick* v. *Blair*, 1 Johns. Ch. 101; *Devereaux* v. *Burgman*, 11 Ind. 490; *Walls* v. *Wilson*, 28 Pa. St. 514; *May* v. *Yancy*, 4 Leigh, 462; *Rheem* v. *Allison*, 2 S. & R. 113; *Ellmaker* v. *Buckley*, 16 id. 72; *Dougherty* v. *McWhorter*, 7 Yerg. 254; *Brown* v. *Leavitt*, 26 Me. 251; *Morville* v. *American Tract Society*, 12 Mass. 140.

Mr. JUSTICE WALKER delivered the opinion of the Court:

The parties to this record had business transactions running through a number of years, and being unable to adjust their differences, they agreed to submit them to the award of three arbitrators. They were duly selected, and heard the evidence and the parties, and found and published an award that plaintiff in error pay to defendant in error $1100. By agreement this award was set aside, and the matters again submitted to the award of Henry Sisson, John Becker, and Jonathan Hubbell. After a hearing of the witnesses they published an award that plaintiff in error pay to defendant in error $704.62. Thereupon Moshier filed this bill to set aside the award and enjoin its collection.

The bill alleges several grounds, among which is the charge of misconduct of Hubbell, one of the arbitrators. It charges that he, after being selected to act, saw Stephens, who had been one of the arbitrators when the case was previously tried, and was fully informed as to all of the particulars of the controversy, and talked freely with him in reference to the case; that Hubbell was thereby prejudiced, and rendered incompetent to act as an arbitrator; that plaintiff in error was not informed of the fact, nor did he learn it, until after the award was executed and published. He charges that by reason of the misconduct of this arbitrator he was greatly injured and wronged. On a hearing in the circuit court it was found that the arbitrator was incompetent to

act, the award was not, for that reason, binding, and the court decreed that it be vacated and set aside. Thereupon Shear appealed to the Appellate Court for the Second District, where the decree was reversed, but the case was not remanded to the circuit court, whereby its decree is final. Thereupon Moshier prosecutes error, and urges a reversal of the decree of the Appellate Court.

In the view we take of this case, it becomes necessary to consider but one question, and that is, whether the misconduct of Hubbell was such as to require the award to be set aside and vacated. That his having a full, free and unre-restricted conversation with Stephens, who was fully informed as to all of its details, was misconduct, is not denied. After being selected, it is the duty of an arbitrator, like a juror, to act fairly and impartially between the parties and on the evidence adduced before them on the trial, and entirely independent of all outside influences, and what will be misconduct on the part of a juror will, as a general rule, be such on the part of an arbitrator. Neither has a right to learn facts except as brought to his attention on the trial. It is gross misconduct for either to seek evidence or the opinions of others in regard to the case, or anything material to its decision in another mode. It is virtually conceded that had defendant in error conversed with the arbitrator, the award being in his favor, it would have been set aside, on the presumption that it was obtained by improper influence, and the same would be equally true had an agent or the attorney of defendant in error conversed with the arbitrator in reference to the controversy.

Stephens testifies that Hubbell was at his house, and they conversed in reference to the former arbitration. He did not remember whether Hubbell inquired in reference to it, as he voluntarily introduced the subject; that the matter was talked over, and he informed Hubbell what items they allowed, and what they rejected; that he told him they

allowed Shear only such items as were corroborated by evidence of other persons. Rice said to Hubbell that Moshier believed that his mind was made up through the influence of Stephens. He replied he did not think. Stephens intended to influence him. He did not say he was influenced by what Stephens told him.

In his testimony Hubbell says he had known Stephens twenty years prior to the conversation, and their relations had been friendly, and he held him in high esteem; that he went to his house in the evening—they had three or four hours conversation that evening. "We talked a good deal about it, but I don't recollect that he gave me a full account of the case, or I will say further, that it was talked about freely,—nothing was kept back for delicacy."

It is true that there is no positive proof that the arbitrator was influenced in his opinions by the conversation, but we have no reason to expect such proof in such cases. However much he may have been influenced, it is scarcely probable that he would be aware of the fact. Such effects are seldom perceptible or consciously produced. They are usually imperceptible, and unknown to the subject of their influence. However honest and upright Hubbell may be, and however he may feel free from influence produced by his conversation with Stephens, still it is almost impossible to believe that such a conversation with a friend of long standing, and for whom the arbitrator had a high regard, did not produce strong, if not controlling, convictions on his mind, and however desirable it may be to terminate protracted contention, it is more desirable that justice shall be administered, free from all improper or corrupting influences,—that the mode of settling contests by arbitration shall be kept pure, and free from improper influences. Here, whatever the motive of the arbitrator, he was subjected to improper influences, and whether or not it operated to the injury of plaintiff in error, it was calculated to operate to the prejudice of the parties,

and to sanction it would form a dangerous precedent. We can not know what influence it may have exerted in this case. It is sufficient that it was calculated to produce improper results.

To sustain this award would be to sanction and justify the means by which the whole system of arbitration would be perverted and corrupted. If we hold that the party thus objecting must prove that undue influence actually resulted, then the objection would seldom be available, however corrupt the influence. Such things can seldom, owing to precautions taken by those engaged in such practices for concealment, be shown by positive evidence, hence the safer rule is, to hold that when it appears there has been conduct calculated to result, and which has probably resulted, perniciously, to set aside the award. It is clear that had Shear done what Stephens did, or had he procured another to do the same thing, there could not have been the slightest hesitation in setting aside the award, and yet the influence of Stephens was equal to, if not more potent than that of Shear would have been, on the mind of the arbitrator, who was his intimate friend, and whom he held in high esteem. What more powerful influence could have been exerted? If we sustain this award we shall license every person, whether a partizan or not to the contest, to enter into the conflict, and exercise his full influence, whether inspired by friendship or hatred of the parties to the contest, only excluding the unseemly and improper conduct of the parties themselves, their attorneys or agents. We must therefore hold that the conduct of Hubbell was improper, to an extent that rendered him incompetent to act in the case.

It is, however, urged, that the submission was to three arbitrators named, or to any two of them, and the award published by the three, or any two of them, should be binding on the parties to the submission, and that it was signed and published by all three, and hence the award is made

and published by two of the arbitrators, against whom there is no charge of misconduct of any kind. This reason is more apparent than real. The misconduct of a juror has always been held ground for setting aside a verdict, notwithstanding the other eleven concurred with him in the finding; and it is because it is impossible to know the extent of his influence over the minds of the other jurors, and because that fact is incapable of proof, and can not be known, the courts, to avoid the probability that the misconduct of one has influenced the others, to keep the stream of justice certainly pure will set the verdict aside. So, here, no one can know the extent of Hubbell's influence over the minds of the other two. For aught we can know, it may have controlled in making up the award that was published. Plaintiff in error had the right to have all who acted, free from bias and improper influences produced after their selection. Had but the other two acted, then we can see no objection to the award. But all of the members who did act were not free from improper influences, and he was thus deprived of an essential right secured to him by the law, and for that reason the award should be set aside, and the circuit court committed no error in the decree it rendered, but the Appellate Court erred in reversing it.

The decree of the latter court is reversed, and the cause remanded.

*Decree reversed.*