[No. 350-2.  Division Two.  December 23, 1971.]

ST. PAUL INSURANCE COMPANIES, *Appellant*, v. EDGAR LUSIS, *Respondent*.

*E. H. Knapp, Jr.* (of *McMullen, Brooke, Knapp & Grenier*), for appellant.

*Michael S. Manza* (of *Sterbick, Manza, Moceri, Gustafson & Narigi*), for respondent.

PETRIE, C.J.—Appellant assigns error to the trial court's failure to grant its application to vacate an arbitration

award. Appellant contends, primarily, that it had been prejudiced by the failure of the arbitrator to disclose that he and one of respondent's counsel were both members of the Board of Governors of the Washington State Trial Lawyers Association.

Respondent was injured in an automobile accident with an uninsured motorist and made claim under the uninsured motorist coverage of his automobile insurance policy with appellant. The policy provided that, if the parties could not agree, upon the demand of either party, the matter in disagreement "shall be settled by arbitration in accordance with the rules of the American Arbitration Association . . .". The claim was ultimately submitted to arbitration and Annon W. May, an attorney practicing in Tacoma, Washington, was selected by the parties as arbitrator from a list of three attorneys supplied by the American Arbitration Association (hereinafter called the AAA) and drawn from their panel of arbitrators. A hearing was held and May awarded respondent $15,000, the limits of his policy. Appellant petitioned superior court to vacate the award upon the ground that May failed to disclose certain facts which prejudiced appellant's right to a fair and impartial hearing. The trial court denied the petition and entered judgment on the award, from which appellant brings this appeal.

There is no contention that the hearing was improperly or unfairly conducted, nor that there was any corruption or fraud on the part of the arbitrator, nor that he even knew the injured party. Appellant bases its claim of prejudice upon May's undisclosed personal and professional relationships with one of respondent's *counsel*. At the time of the arbitration hearing, May was a member of the Board of Governors of the Washington State Trial Lawyers Association. At the same time, respondent's counsel at that hearing, Michael Sterbick, was president of the Washington State Trial Lawyers Association and was personally, or at least professionally, acquainted with May. Other than these facts, May had no financial or personal interest in the subject matter of the arbitration and had no connection with

either party thereto or their counsel, personally or financially. The record indicates that May and Sterbick had never been associated in the practice of law nor had they ever associated as co-counsel in the trial of any action. Indeed, on numerous occasions they had been adversaries.

Appellant's attack on May's qualifications as an impartial arbitrator directs particular attention to the notice of appointment sent May which advised him that the attorneys for the respective parties were Peter L. Sterbick and E. H. Knapp. Michael and Peter Sterbick are brothers and partners in the practice of law in Tacoma under the firm name of Sterbick, Manza, Moceri, Gustafson and Narigi. At one time Peter Sterbick had been, but for several years past has no longer been, a member of the Washington State Trial Lawyers Association. The notice of appointment contained the following admonitory statement:

> An Arbitrator must not only be impartial, but the parties must have complete confidence in his impartiality. Therefore, please disclose any past or present relationship with the parties or their counsel, direct or indirect, whether financial, professional, social or other kind. Any doubt should be resolved in favor of disclosure. If you are aware of such relationship, please describe it on the other side of this form. The Association will call the facts to the attention of the parties or their counsel.

Appellant contends that when May accepted the appointment, and swore that he would "faithfully and fairly hear and examine the matters in controversy", he should have disclosed that he and Peter Sterbick's brother and partner, Michael, were both members of the Board of Governors of the Washington State Trial Lawyers Association. Further, appellant contends, that when Michael Sterbick personally appeared at the arbitration hearing, May should have disclosed his prior association with Michael.

Section 9 of the Accident Claims Rules of the AAA provides:

> No person shall serve as an Arbitrator in any arbitration in which he has any financial or personal interest. Arbitrators serve without fee in accident claims cases.

*An Arbitrator shall disclose any circumstances likely to create a presumption of bias which might disqualify him as an impartial Arbitrator.* Either party may advise the AAA of any reason why an Arbitrator should withdraw or be disqualified from serving. If any Arbitrator should resign, be disqualified or unable to perform the duties of his office, the AAA may appoint another Arbitrator to the case.

(Italics ours.) An affidavit of William Allender, the regional manager of the AAA, declares that if both the arbitrator and an attorney for one of the parties are officers in a group formed to further the interests of injured persons seeking compensation for their injuries such a relationship should be disclosed to the AAA and to the parties to the arbitration.

In considering an application to vacate an arbitration award it is the function of the trial court to ascertain whether or not *statutory* grounds exist to vacate the award. In this state, arbitration proceedings are wholly statutory, and the rights of the parties thereto are governed and controlled by statutory provisions. *Puget Sound Bridge & Dredging Co. v. Lake Washington Shipyards,* 1 Wn.2d 401, 96 P.2d 257 (1939). The parties to an arbitration agreement may surround themselves with such procedural safeguards as they deem necessary and define the powers of the arbitrator, but violation of any such conditions need not necessarily coincide with a statutory ground for vacation of an award. Thus, our review is limited to whether or not there was a violation of any of the statutory provisions regulating the vacation of awards.[1] More explicitly, under the factual pattern presented by this case, our concern is whether or not a violation of the AAA rules, if one took place, was sufficient to constitute a violation of one or more of the provisions of RCW 7.04.160. *Northern State Constr. Co. v. Banchero,* 63 Wn.2d 245, 386 P.2d 625 (1963).

The pertinent provisions of RCW 7.04.160 are:

---

[1] In addition, of course, an award which violates the basic law of the state could not be enforced, but we need not consider the ramifications of such a possibility under the facts presented in this case.

In any of the following cases the court shall after notice and hearing make an order vacating the award, upon the application of any party to the arbitration:

(1) Where the award was procured by corruption, fraud or *other undue means*.

(2) Where there was *evident partiality* or corruption in the arbitrators or any of them.

(3) Where the arbitrators were guilty of misconduct, in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence, pertinent and material to the controversy; *or of any other misbehavior, by which the rights of any party have been prejudiced.*

. . .

An award shall not be vacated upon any of the grounds set forth under subdivisions (1) to (4), inclusive, unless the court is satisfied that substantial rights of the parties were prejudiced thereby.

(Italics ours.)

Appellant seeks vacation of the award under three separate statutory grounds: that the award was procured by (1) "undue means"; (2) "evident partiality"; or (3) "any other misbehavior, by which the rights of any party have been prejudiced." Obviously, we are not at this point concerned with whether or not May complied with each and every admonitory declaration or unofficial pronouncement of the AAA or whether or not his interpretation of such admonitions or pronouncements coincides with the interpretation placed upon them by any official of the AAA itself. *Ballantine Books, Inc. v. Capital Distributing Co.,* 302 F.2d 17 (2d Cir. 1962). Rather, we are concerned with whether or not the relationship between May and Michael Sterbick was a necessarily disclosable relationship.

Not every relationship is a disclosable relationship. In *Perl v. General Fire & Cas. Co.,* 34 App. Div. 2d 748, 310 N.Y.S.2d 196 (1970), the court determined that an attorney arbitrator whose practice consisted of representation of insurance companies, though in what particular aspect does not appear, and who also had an interest in a company which provided investigatory services for insurance companies was not required by the AAA rules to disclose such activities when appointed to arbitrate pursuant to a clause

in an insurance policy. There was no contention that the arbitrator had ever represented the company involved in the arbitration proceedings nor that it had ever subscribed to the services which the investigatory company provided. The contention was made, however, that the arbitrator's practice and experience would tend to make him partial to insurance companies and that, regardless of whether such predilection did in fact influence the arbitrator, his failure to make disclosure vitiated the award. In denying relief on such a contention the court stated:

> The rules of the American Arbitration Association under which the arbitration was held state what disclosures must be made (§ 13). They consist of two factors: relationship with any party, and any circumstance likely to create a presumption of bias. Practically ever since arbitration has come to be an approved method of determining controversies it has been recognized that familiarity with the field in which the dispute lies is a highly desirable qualification for an arbitrator. "Knowledge of a business and the methods used therein may be of great value in reaching a just result because of the ability of an arbitrator to apply such knowledge to the facts" . . . . In no other way except by activity in the particular field can such knowledge be gained. So it has been recognized that occasional contacts even with one of the parties to the arbitration are neither grounds for disqualification nor dictate a necessity for disclosure . . . This has special emphasis in regard to an attorney who practices in a certain field and represents clients in the same category as one of the parties to the arbitration . . .

(Citations omitted.) 310 N.Y.S.2d at 197.

On the other hand, in *Milliken Woolens, Inc. v. Weber Knit Sportswear, Inc.,* 11 App. Div. 2d 166, 202 N.Y.S.2d 431 (1960), *aff'd,* 9 N.Y.2d 878, 216 N.Y.S.2d 696, 175 N.E.2d 826 (1961), the court vacated an award because of the prior and continuing relationship of an arbitrator with one of the attorneys to the proceedings.

> In the case of one of the arbitrators, who is an attorney, it appeared that he had been on the staff of the same law firm with respondents' trial counsel up to a time two and one-half years before the arbitration was held. Not

only was that relationship not disclosed to appellant, but appellant may well have been misled by the innocuous statement in a letter written by the arbitrator, at the time of his appointment, that he was "acquainted with each of the attorneys representing the respective parties". Moreover, after the award had been made, appellant discovered that the law firm representing respondents and the arbitrator's law firm had served as co-counsel in a number of matters, one of which was pending at the time of the arbitration. Unquestionably, the foregoing relationships disqualified the attorney arbitrator from acting in this case in the absence of a waiver by appellant.

202 N.Y.S.2d at 434.

In *Cross Properties, Inc. v. Gimbel Bros.*, 15 App. Div. 2d 913, 225 N.Y.S.2d 1014 (1962), *aff'd*, 12 N.Y.2d 806, 236 N.Y.S.2d 61, 187 N.E.2d 129 (1962), the New York courts refused to vacate an award made by an arbitrator whose real estate company had engaged in a series of business relationships with one of the parties (Gimbel Bros.). The court did, however, attempt to establish criteria distinguishing disqualifying relationships from those in which nondisclosure did not violate the AAA rules.

The only ground advanced in support of vacatur that deserves more than a summary disposition is that concerning the relationship between the arbitrator, Spear, and the respondent. We agree that where there are undisclosed dealings between a party and an arbitrator which impart a lack of impartiality and fairness, the award made is subject to vacatur (Matter of Friedman, 215 App.Div. 130, 137, 213 N.Y.S. 369, 376; Matter of Milliken Woolens [Weber Knit Sportswear], 11 A.D.2d 166, 202 N.Y.S.2d 431, aff'd 9 N.Y.2d 878, 216 N.Y.S.2d 696, 175 N.E.2d 826). However, this is not to say that any undisclosed relationship, no matter how peripheral, superficial or insignificant, compels the same result. "Courts are loath to sustain belated claims of disqualification after an adverse award" (Matter of Atlantic Rayon Corp. [Goldsmith], 277 App.Div. 554, 556, 100 N.Y.S.2d 849, 850), and particularly should this be so where the arbitration proceeding is a lengthy and involved one extending over a period of several years as in this case. *The type of relationship which would appear to*

*disqualify is one from which it may not be unreasonable to infer an absence of impartiality, the presence of bias or the existence of some interest on the part of the arbitrator in the welfare of one of the parties.*

While there was a "relationship" here between the respondent and the arbitrator, we find it not to be a disqualifying one. The transactions between them were isolated and involved nothing of such a nature as would cause Spear to act other than with the requisite impartiality. The nature and magnitude of the real estate company with which Spear was affiliated would make it most likely that at one time or another there would be some contact with one of the largest department stores in the City of New York. Whether or not Spear disclosed such relationship to the tribunal clerk is of no consequence. The rules of the arbitration association required a disclosure only if the circumstances were "likely to create a presumption of bias" or were such as would make the arbitrator believe "might disqualify him as an impartial arbitrator." In the light of the nature of the relationship a failure to disclose would not have been violative of the rules.

(Italics ours.) 225 N.Y.S.2d at 1016.

In still another case, not subject to the AAA rules, the United States Supreme Court vacated an award in which the arbitrator, an engineering consultant, failed to disclose that he had had prior business relationships with one of the parties. The party had been one of the arbitrator's "regular" although in a sense "sporadic" customers in that the services had been used at irregular intervals and not at all within a year preceding arbitration. Nevertheless, the arbitrator's services were categorized as repeated and significant, involving fees of about $12,000 over a period of 4 or 5 years and included services rendered on the very project which was involved in the arbitration matter. A majority of the court, interpreting a federal statute authorizing vacation of an award for "evident partiality" or "undue means" declared:

We can perceive no way in which the effectiveness of the arbitration process will be hampered by the simple requirement that arbitrators disclose to the parties any

dealings that might create an impression of possible bias.

. . .

. . . We cannot believe that it was the purpose of Congress to authorize litigants to submit their cases and controversies to arbitration boards that might reasonably be thought biased against one litigant and favorable to another.

*Commonwealth Coatings Corp. v. Continental Cas. Co.*, 393 U.S. 145, 149, 21 L. Ed. 2d 301, 89 S. Ct. 337 (1968).

From review of the foregoing cases, and others cited or footnoted therein, we detect several varied factual patterns which assist in interpreting that portion of the AAA rules which declares, "An Arbitrator shall disclose any circumstances likely to create a presumption of bias which might disqualify him as an impartial Arbitrator." 1. A specialized, 1-sided practice coupled with an actual ownership interest in an investigating service company utilized by the same "side" is not a necessarily disclosable circumstance, at least where such specialized practice and investigatory service has not been on behalf of or utilized by the specific party toward whom the bias has been alleged. 2. Prior business or financial relationship with one of the *parties* may or may not be a necessarily disclosable circumstance, depending somewhat upon a case-by-case determination of how significant, regular, recent, or continuing such a relationship was or is. 3. Relatively recent, although prior, professional association with *counsel* for one of the parties as a member of the same law firm, at least when coupled with a continuing and present "co-counsel" arrangement on other matters, is a necessarily disclosable circumstance.

Slightly restructuring the rule of *Cross Properties, Inc. v. Gimbel Bros., supra,* we conclude that a necessarily disclosable circumstance or relationship for lack of triviality or insignificance is one from which it would probably not be unreasonable to infer presence of bias, absence of impartiality, or existence of interest in the welfare of one of the parties. *See also Colony Liquor Distrib., Inc. v. Teamsters Local 669,* 34 App. Div. 2d 1060, 312 N.Y.S.2d 403 (1970), *aff'd,* 28 N.Y.2d 596, 319 N.Y.S.2d 849 (1971).

The real thrust of appellant's objection to May's failure to disclose probably relates to his failure to disclose that he was a member of the Board of Governors of the Washington State Trial Lawyers Association, and not primarily that both he and Michael Sterbick were currently associated through joint membership on the executive body of a bar association. Obviously, there is some degree of public knowledge of such a relationship, particularly among those who might be engaged in the field of personal injury litigation. Therefore, we must consider the effect, if any, of the notoriety or public knowledge which surrounded the relationship of May and Michael Sterbick. Just as a given circumstance or relationship may be too trivial to require disclosure, so also open declaration or public knowledge of the circumstance or relationship might be such as to negate the necessity to disclose. *L. N. Jackson & Co. v. Compania Gasoliba Soc. Anon.*, 282 App. Div. 125, 121 N.Y.S.2d 624 (1953). In most instances the disclosable matter is obscured or hidden from general knowledge. But if there is a substantial degree of notoriety, the test of whether or not the matter should be disclosed by the arbitrator is not whether or not the party subsequently "aggrieved" had actual knowledge of the circumstance or relationship. Rather, the test in such a case is whether or not it would be unreasonable for the arbitrator to assume that such party obviously must have knowledge of the matter.

In the case at bar, metropolitan newspapers carried accounts of those elected to membership on the Board of Governors of the Washington State Trial Lawyers Association at the September, 1969 convention; the organization itself circularized the active members of the bar throughout the state with notice of subsequent seminars—which notices listed the membership of the board of governors; appellant is obviously a party extensively engaged in litigation involving disputes between parties involved in motor vehicle accidents; and a senior partner of the law firm representing appellant actually attended a seminar sponsored by the Washington State Trial Lawyers Association

in March, 1970, several days prior to the date of the notice of appointment sent to the arbitrator.

In applying these principles to any given factual pattern, we cannot impose upon the parties that standard which we might impose upon ourselves, but rather that standard which a reasonably prudent attorney arbitrator[2] ought to have applied, without the benefit of hindsight, but with the benefit of the knowledge of the full factual pattern before him. Considering the totality of the circumstances and facts existing in this case, we agree with the trial court, that the arbitrator's failure to disclose either his membership on the board of governors or his service with one of respondent's counsel on that board does not constitute sufficient grounds to warrant vacatur of the arbitrator's award.

Judgment affirmed.

ARMSTRONG and SWANSON, JJ., concur.

Petition for rehearing denied April 4, 1972.

Review denied by Supreme Court May 24, 1972.

---

[2]Section 34 of the AAA rules imposes upon the arbitrator the duty to interpret and apply the rules insofar as they relate to his powers and duties, but clearly such interpretation and application must relate to some objective standard capable of judicial review.