## McKINNEY DRILLING COMPANY v. MACH I LIMITED PARTNERSHIP

[No. 1219, September Term, 1975.]

*Decided June 30, 1976.*

The cause was argued before █GILBERT, MENCHINE and MOORE, JJ.

*Robert D. Powell* for appellant.

*Charles R. Donnenfeld,* with whom were *James K. Stewart, Thomas P. Gilliss* and *Arent, Fox, Kintner, Plotkin & Kahn,* on the brief, for appellee.

*GILBERT, J., delivered the opinion of the Court.

The American Arbitration Association explains that

"[a]rbitration is the voluntary submission of a dispute to a disinterested person or persons for final determination."[1] This appeal has resulted from an arbitration award which was vacated by Judge Joseph M. Mathias in the Circuit Court for Montgomery County. In order to determine whether the circuit court action was proper, we must set out a brief recitation of the circumstances underlying this appeal.

McKinney Drilling Company (McKinney), appellant, contracted with Mach I Limited Partnership (Mach), appellee, to supply materials and construct concrete caissons for an office building being constructed by Mach in Maryland. Mach refused to pay McKinney the approximately $51,000 contract balance for the work performed, asserting that the concrete did not meet the strength specifications required by Mach. The contract between the parties provided for resolving such disputes. Under the terms of the contract, disputes initially were to be submitted to the architects of the project. After they had made their determination, if either party was dissatisfied, it could demand that the dispute be submitted to the American Arbitration Association whose decision shall be final and enforceable under the law of the project situs.

In this case, the architects considered the dispute and, on November 1, 1973, notified McKinney that testing results indicated that the concrete did not meet the contract strength specifications. McKinney demanded arbitration of the dispute, and Mach counterclaimed in the arbitration proceeding for a minimum of $75,000 damages which it averred resulted from delays and additional construction costs arising out of the concrete's weaknesses. The parties selected an arbitrator from a list supplied by the Association, and hearings were held.

In addition to the parties to the dispute, Maloney Concrete Company, the concrete supplier to McKinney, was permitted

---

1. American Arbitration Association, "Construction Industry Arbitration Rules," at 3 (1973).

to participate indirectly.[2] On May 28, 1974, the arbitrator found in favor of McKinney by awarding it $51,107.80 plus six percent interest from November 28, 1973. There were no findings of fact made. The counterclaim of Mach was not decided. The only statement made by the arbitrator, besides the amount of the award, was that "[t]his award is in full settlement of all claims submitted to this arbitration."

On June 18, 1974, McKinney filed a petition in the Circuit Court for Montgomery County, pursuant to Md. Ann. Code, Courts and Judicial Proceedings Art. § 3-227, seeking confirmation of the arbitration award inasmuch as Mach had not yet paid the amount awarded. Mach answered and both parties moved for summary judgment.[3] The motions were denied, according to McKinney, because the pleadings and arguments of counsel left doubt in the judge's mind as to how Mach's counterclaim had been treated by the arbitrator. McKinney then sought to reopen the arbitration for the purpose of clarifying the award. On June 27, 1975, the court granted the motion and ordered the parties to exchange questions and agree upon those to be asked of the arbitrator.

Prior to the inquisition of the arbitrator by the parties, the arbitrator notified the American Arbitration Association that his construction company, subsequent to the arbitration award in this case, submitted a bid to

---

2. Although McKinney denies that Maloney actively participated, the appellant concedes that (1) despite the arbitrator's order that all witnesses be sequestered, Maloney's vice-president was permitted to attend the arbitration sessions ". . . as a 'person with a direct interest . . .'," and he testified as a concrete expert; (2) McKinney's counsel was assisted by Maloney's attorney who played an active role in the arbitration hearings; and (3) Maloney had agreed to reimburse McKinney for any award against McKinney because of weak concrete.

3. An answer and a motion for summary judgment may be superfluous under Courts Art. § 3-227 (b). That subdivision of the section mandates that the court ". . . shall confirm the award, unless the other party has filed an application to vacate, modify, or correct the award . . . ." This issue was not raised and decided in the hearing court, and, therefore, it is not before us. Md. Rule 1085. We note, however, that Mach's "Answer" and "Amended Answer" both include numerous defenses which were apparently interpreted by the hearing judge and the parties as a petition to vacate the award. Courts Art. § 3-224.

develop a building on property owned by Maloney Concrete Company. The parties were also notified, and Mach immediately objected to the arbitrator's continuing to act in this dispute. When Mach's objection was overruled by the Association, Mach then moved that the court strike its order reopening the arbitration. The motion was denied, but the court issued a supplemental order permitting the parties to ask questions of the arbitrator concerning his prior relationship with Maloney Concrete Company.

Pursuant to that order, a hearing was held on August 13, 1975, in which McKinney and Mach inquired of the arbitrator as to his relationship with Maloney. The arbitrator explained that he bought concrete from Maloney to use in his company's construction projects. The record indicates that the relationship was ongoing at the time the arbitrator considered the McKinney-Mach dispute, although the amount of concrete bought in recent years had been extremely small. When questioned about his treatment of Mach's counterclaim, the arbitrator stated ". . . I neither granted it [the counterclaim] or denied it. I did not consider it because it was outside the scope of the arbitration." The arbitrator further said that he had issued no findings of fact or conclusions of law because neither is required by the Association's rules.

Subsequent to the arbitrator inquiry hearing, Mach, on September 11, 1975, filed an amended answer to the petition for confirmation in which Mach asserted that the arbitration award should be vacated because (1) not all the claims were adjudicated; (2) Maloney participated in the arbitration hearings even though Mach had no agreement with Maloney; and (3) the arbitrator did not disclose his own relationship with Maloney. Both McKinney and Mach again moved for summary judgment. McKinney's motion was denied, but summary judgment was granted for Mach, and Judge Mathias ordered that the arbitration award be vacated.

No transcript of the hearing or findings of fact, if any, or conclusions of law reached by the judge are included in the record. While McKinney's brief and argument advance a

number of issues for our review,[4] we think the only question is whether the hearing judge erred in granting Mach's motion for summary judgment.

The duties of an appellate court, when reviewing a motion for summary judgment, are extensively discussed in *Lynx, Inc. v. Ordinance Products, Inc.*, 273 Md. 1, 327 A. 2d 502 (1974):

> "In reviewing the propriety of the grant of a summary judgment we are concerned primarily with deciding whether a factual issue which was material to the resolution of the controversy existed and whether the trial judge was legally correct . . . . Where the record shows that there was no such genuine dispute as to any material fact necessary to resolve the controversy as a matter of law, and it is shown that the movant is entitled to judgment, the entry of summary judgment is proper." 273 Md. at 8. (Citations omitted).

This is the test we shall apply in this case.

McKinney does not dispute the material facts that the arbitrator never expressly ruled on Mach's counterclaim even though it was properly before him, did not disclose his ongoing relationship with Maloney Concrete, and allowed

---

4. McKinney raised the following issues in its brief:

"Point I — The Maryland Uniform Arbitration Act Applies to the Arbitration Before the Court.

Point II — (a) The Court Below Erred in Failing to Correct the Award as it Decided all the Issues Between the Parties.

(b) The Failure on the Part of the Arbitrator to Decide the Counterclaim was not Evidence of Bias or Partiality Giving Rise to a Presumption of Prejudice, Fraud in Procuring the Award, or Other Undue Means.

Point III — The Court Below Erred in Failing to Recommit the Award to the Arbitrator For Decision of the Counterclaim.

Point IV — The Arbitration Award is not Void on Account of the Failure of the Arbitrator to Disclose his Trivial and Inconsequential Dealings with Maloney.

Point V — The Various Claims of Impropriety on the Part of the Arbitrator in connection with his Presiding over the Parties at Hearing are Without Merit."

Maloney, indirectly, to participate in the arbitration hearing through its counsel and vice-president although it had no agreement with Mach. It is clear to us that the hearing judge granted summary judgment based on Mach's amended answer which was grounded on the above recited undisputed facts.

We were told on oral argument that there was a verbal opinion delivered by the hearing judge at the time he granted summary judgment for Mach, but no transcript thereof is included within the record so that we are unable to pass on the substance of the judge's opinion. We, therefore, of necessity, review the record before us as the basis for the summary judgment.

McKinney admits on appeal that it was an error for the arbitrator not to consider the counterclaim, but asserts that the court should have corrected the award accordingly or remanded the issue to the arbitrator for determination. Mach counterargues that the arbitrator exceeded his authority in making a final award "in full settlement of all claims submitted" when the arbitrator did not even consider the counterclaim.

We note (1) that paragraph number 7.10.1 of the contract between McKinney and Mach provides that "[a]ll claims . . . shall be decided by arbitration . . ."; [5] (2) the claim and counterclaim arise from the same factual dispute; and (3) the arbitrator's award purports to settle all claims submitted to him. It is manifest from the questions asked of the arbitrator that the counterclaim was presented, but that he failed to consider it under the mistaken belief that it was outside the scope of the arbitration. Patently, such belief is inconsistent with the statement in the arbitration award

---

5. The clause further states that arbitration may be waived. No contention of waiver is presented here.

Paragraph number 7.10.1 is from a standard contract. An almost identical clause was at issue in Bel Pre Medical Center, Inc. v. Frederick Contractors, Inc., 21 Md. App. 307, 320 A. 2d 558 (1974), *rev'd on other grounds*, 274 Md. 307, 334 A. 2d 526 (1975), and was deemed to be a broad arbitration provision requiring that ". . . all issues other than those expressly and specifically excluded must be submitted to arbitration." 21 Md. App. at 327.

that the "... award is in full settlement of *all* claims submitted to the arbitration." (Emphasis supplied).

Under Md. Ann. Code, Courts and Judicial Proceedings Art. § 3-224 (b) (3), an arbitrator's exceeding his power is sufficient reason to vacate an arbitration award. Perhaps Judge Mathias concluded that the arbitrator exceeded his power by not considering *all* the claims that were before him. *See Bel Pre Medical Center, Inc. v. Frederick Contractors, Inc., supra* note 5. Consequently, as a matter of law, the judge was justified in granting summary judgment for Mach and vacating the arbitration award.

The same result would have been reached by the judge if he had decided that the arbitrator was not neutral at the time the claim was considered. According to the "Construction Industry Arbitration Rules," an arbitrator must disclose any information which may impair his neutrality.[6] Courts Art. § 3-224 (b) (2) permits an arbitration award to be vacated if "[t]here was evident partiality by an arbitrator appointed as a neutral, corruption in any arbitrator, or misconduct prejudicing the rights of any party." The hearing judge had before him the evidence showing that the arbitrator's ongoing relationship with Maloney Concrete might have tainted the arbitrator's neutrality. Moreover, the evidence disclosed that Maloney's vice-president was permitted by the arbitrator to attend the arbitration sessions and to testify notwithstanding Mach's motion to exclude all witnesses. Furthermore, Maloney's counsel actively participated in the sessions as co-counsel for McKinney and, inferentially, simultaneously, did so to protect Maloney from the liability to which it had subjected itself by virtue of its indemnity agreement with McKinney. Such evidence was sufficient, as a matter of law, to permit

---

6. American Arbitration Association, "Construction Industry Arbitration Rules" § 18 (1973), provides:

"A person appointed as a neutral arbitrator shall disclose any circumstances likely to create a presumption of bias or which might disqualify him as a neutral arbitrator, including any past or present relationship with the parties or their counsel."

the judge to draw a rational inference that the arbitrator was not neutral.

If the foregoing reasons were not enough to vacate the award, we observe that the arbitrator permitted Maloney's vice-president to attend all sessions and testify even though all witnesses were to be sequestered. Maloney, although not a party to the arbitration, had an interest in the outcome. Based on that decision by the arbitrator, Judge Mathias could have believed that the arbitrator exceeded his power in permitting Maloney's presence and participation, and, thereby, denied Mach procedural fairness. *See Chillum-Adelphi Volunteer Fire Dept. v. Button & Goode, Inc.*, 242 Md. 509, 517, 219 A. 2d 801, 806 (1966).

As we have previously stated, we do not know the precise grounds upon which the hearing judge bottomed his ruling because there is no transcript of the judge's opinion included in the record. Any one of the three possible alternative routes we have discussed herein would have justified the vacating of the arbitration award.

*Judgment affirmed.*
*Costs to be paid by appellant.*