FREEPORT CONSTRUCTION COMPANY, Claimant and Counterrespondent-Appellee, *v.* STAR FORGE, INC., Respondent and Counterclaimant-Appellant.

Second District    No. 77-184

Opinion filed June 29, 1978.

Woodruff A. Burt, of Freeport, and Juris Kins, of Chadwell, Kayser, Ruggles, McGee & Hastings, of Chicago, for appellant.

Bert P. Snow and John B. Whiton, both of Freeport, for appellee.

Mr. PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

This appeal raises a preliminary question as to the jurisdiction of courts to review a determination by the American Arbitration Association that an arbitrator should not be removed for alleged "evident partiality." (Ill. Rev. Stat. 1975, ch. 10, par. 112(a)(2.) There is the further question whether the award should be vacated or whether the cause should be remanded for the taking of further evidence.

## I

■■ The claim that one of the panel of three arbitrators was not impartial was made to the American Arbitration Association during the pendency of the hearing before the arbitrators. Freeport Construction Company suggests that the determination of the American Arbitration Association, after an investigation of the claim that there was no bias or partiality, is binding on the court. We conclude, however, that the trial court and on appeal the reviewing court have the power to decide whether the arbitrator was subject to removal for partiality or bias even though the American Arbitration Association has investigated the matter and reached a conclusion on the issue.

The submission to arbitration was made under the terms of a construction contract and involved generally a dispute between Freeport Construction Company, the general contractor (Freeport), and the owner, Star Forge, Inc., arising out of the building of a new manufacturing facility. The arbitration clause of the construction contract specifically incorporated the Construction Industry Arbitration Rules of the American Arbitration Association, which state in pertinent part:

> "No person appointed as a neutral arbitrator shall serve if he has any financial or personal interest in the result of the arbitration, unless the parties, in writing, waive such disqualification.
>
> * * *
>
> A person appointed as a neutral arbitrator shall disclose any circumstances likely to create a presumption of bias or which might disqualify him as a neutral arbitrator. * * * Upon receipt of such information from any source, the AAA shall immediately communicate it to the parties. If a party challenges an arbitrator, he shall be replaced, unless the AAA determines that the circumstances do not disqualify the arbitrator from serving as a neutral." (American Arbitration Association, Construction Industry Arbitration Rules §§11 and 18 (1974).)

The rules themselves do not expressly provide that a determination of the association shall be binding. And the Uniform Arbitration Act authorizes resort to the court in the provision that:

> "(a) Upon application of a party, the court shall vacate an award where:
>
> * * *
>
> (2) There was evident partiality by an arbitrator appointed as a neutral or corruption in any one of the arbitrators or misconduct prejudicing the rights of any party;" (Ill. Rev. Stat. 1975, ch. 10, par. 112(a)(2).)

We conclude that the determination of the association is not binding upon the court. See, *e.g., McKinney Drilling Co. v. Mach I Ltd. Partnership*, 32

Md. App. 205, 359 A.2d 100, 102 (1976); *cf. St. Paul Insurance Companies v. Lusis*, 6 Wash. App. 205, 492 P.2d 575, 581 (1971).

## II

Our disposition of the remaining issues requires a review of the record which includes the complaint of Star Forge to vacate or modify the award of the arbitrators supported by various documents, and the responsive pleadings of Freeport Construction. In substance Star Forge alleges in count I of its complaint that the original contract price was $514,136 with undisputed extras totaling $26,878, resulting in an adjusted contract price of $541,014; that the contract stated that the work would be completed by November 15, 1975, with time stated to be of the essence; that although the deadline was extended to November 30, 1975, the work was still substantially incomplete on that date with the major problem being Freeport Construction's electrical subcontractor, Miller Engineering, which was not performing its work; that because of this on December 3, 1975, Star Forge removed both Freeport Construction and Miller Engineering from the project and employed another electrical contractor to complete the unfinished electrical work. The complaint further states that Freeport Construction responded by filing an arbitration demand with the American Arbitration Association pursuant to the construction contract. At the same time Miller Engineering filed a law suit against both Star Forge and Freeport Construction claiming a mechanic's lien against the real estate in the amount of $50,812 which remains pending awaiting trial; that a panel of three arbitrators was appointed by the arbitration association to hear the dispute and conducted five nonconsecutive days of hearings; that Star Forge has paid out $452,690.01 to Freeport Construction, its various subcontractors and suppliers and including $61,723.23 paid to the substituted electrical contractor; this, when added together with the amount of the arbitrators' award of $147,587.37, would put Star's total cost to obtain full performance of its contract at $600,277.38 which would be $59,263.38 in excess of the adjusted contract price; that this result is contrary to section 21 of the Illinois Mechanics' Lien Act which in substance provides that an owner shall not be compelled to pay a greater sum for the completion of the improvement than the price stipulated in the construction contract, with exceptions not applicable here. (Ill. Rev. Stat. 1975, ch. 82, par. 21.) Under count I Star Forge seeks an order modifying the award of the arbitrators by reducing the amount due Freeport Construction to $88,323.99.

As an alternative ground for setting aside the arbitration award count II in substance makes the further allegations that while the arbitration proceedings were pending Star Forge received a report that there were repeated business dealings between Miller Engineering (Miller) and one

of the arbitrators, Robert R. Stenstrom, who is a local contractor; that Star Forge expressed concern about Stenstrom's neutrality to the American Arbitration Association; that after contacting Stenstrom, the American Arbitration Association wrote Star Forge that he "has no present dealing with [Miller] and there was never a joint venture," although Stenstrom had used Miller as a subcontractor "but not exclusively"; that Star Forge was requested to sign a waiver but did not do so and instead continued to investigate the relationship; that Star Forge discovered that on June 25, 1976, Stenstrom was issued a building permit to construct an electrically heated skating rink for Brick Investment Partnership on Stenstrom Road in Rockford; that five days later Miller received a building permit to do the electrical work on the project; that again Star Forge expressed its concern about Stenstrom's neutrality to the American Arbitration Association with no result; that the chairman of the arbitration panel at some point in the hearing indicated that he would rely heavily upon Stenstrom's expertise as a contractor during the panel's deliberations so that Stenstrom's influence upon the deliberations was disproportionate to that of the other arbitrators; that on August 17, 1976, the arbitrators made their decision and awarded Freeport Construction the amount of $147,587.37 with the provision that from this amount $71,520.85 due to Freeport Construction "shall be paid to Freeport in trust for payment to subcontractors in the amounts specified * * *"; that the amount specified for Miller was $56,800; that one day after the arbitrators had made their decision the association responded to Star Forge's information with respect to the relationship between Miller and Stenstrom involving the construction of a skating rink, stating that they had taken up the matter with Mr. Stenstrom and had been assured that nothing occurred which would affect his ability to serve impartially as an arbitrator and that the association did not consider Mr. Stenstrom disqualified, thereby disallowing any objection.

Freeport filed an answer to Star Forge's petition to vacate the award denying among other things that the adjusted contract price was $541,014 and also denying that the work was substantially incomplete on November 30, 1975. Later Freeport moved for judgment on the pleadings with respect to count I which was granted. Freeport also moved for summary judgment as to count II which was also granted. The appeal followed.

Star Forge presents the claim of "evident partiality" of arbitrator Stenstrom as sufficient to vacate the award on two levels. It first argues that the pleadings and supporting documents show evident partiality as a matter of law in that there existed an "undisclosed, ongoing and current" business relationship between Stenstrom and Miller which although not a party stood to benefit directly from the award. Alternatively it argues that

its complaint raised a material and unresolved issue of partiality which requires a remand for an evidentiary hearing (count II). In addition, Star Forge questions the award on its merits (count I).

Freeport Construction responds that the award should not be vacated because Miller Engineering merely participated in the arbitration through its vice-president Willard Reints who appeared as a witness, and it is not bound by the arbitration award; that any significant relationship with the arbitrator arose after the hearing, and further that the evidence fully justified the award made by the panel of arbitrators.

In *William B. Lucke, Inc. v. Spiegel*, 131 Ill. App. 2d 532, 536 (1970), the court held that where a party seeks to upset an arbitration award on the ground the award is tainted by partiality, it is necessary to show a "direct, definite and demonstrable" interest, on the part of the arbitrator, in the outcome of the arbitration. This standard of review has been expanded in recent years in other jurisdictions to include any substantial undisclosed circumstance or relationship which is likely to create a presumption of bias. *Commonwealth Coatings Corp. v. Continental Casualty Co.*, 393 U.S. 145, 150, 21 L. Ed. 2d 301, 305, 89 S. Ct. 337, 340 (1968); *Sanko S.S. Co. v. Cook Industries, Inc.*, 495 F.2d 1260, 1263 (2d Cir. 1973); *Wheeler v. St. Joseph Hospital*, 63 Cal. App. 3d 345, 133 Cal. Rptr. 775, 793 (1976); *North American Steel Corp. v. Siderius, Inc.* 254 N.W.2d 899, 906 (Mich. App. 1977); *McKinney Drilling Co. v. Mach I Limited Partnership*, 32 Md. App. 205, 359 A.2d 100, 104 (1976); *Bole v. Nationwide Insurance Co.*, 379 A.2d 1346, 1348 (Pa. 1977); *St. Paul Insurance Companies v. Lusis*, 6 Wash. App. 205, 492 P.2d 575, 580 (1971). See also Annot., *Setting Aside Arbitration Award on Ground of Interest or Bias of Arbitrators*, 56 A.L.R. 3d 697, 727-67 (1974). *Cf.* American Arbitration Association, Construction Industry Arbitration Rules §18 (1974); *Moshier v. Shear*, 102 Ill. 169, 175 (1881); *In re Heirich*, 10 Ill. 2d 357, 385 (1956).

In argument Star Forge has contended that an ongoing business relationship existed between Freeport and Miller Engineering and Freeport has admitted that there was a business association in the nature of the employment of Miller as a subcontractor. However, Freeport claims that the relationship arose after the arbitration hearings although before the award and that the only interest of Miller was that its representative was a witness in the arbitration hearings and that the company took no benefit from the award.

If the specific allegations of the Star Forge complaint pertained to business dealings between the arbitrator and the opposing party, Freeport Construction, then the complaint would undoubtedly be sufficient. This appeal, however, relates to the alleged business dealings between the arbitrator and Miller Engineering, a nonparty. While the case law indicates that an undisclosed relationship between an arbitrator and a

nonparty may also "be sufficient to create an impression of bias" (*San Luis Obispo Bay Properties, Inc. v. Pacific Gas & Electric Co.*, 28 Cal. App. 3d 556, 104 Cal. Rptr. 733, 742 (1972); *McKinney Drilling Co.*, 32 Md. App. 205, 359 A.2d 100, 104), it is obvious that the nexus between the nonparty and the arbitration must be substantial in order to reasonably create such an impression. In the final analysis, these matters must be decided on a case-by-case basis depending on the facts. 28 Cal. App. 3d 556, 104 Cal. Rptr. 733, 742; *Colony Liquor Distributors, Inc. v. Teamsters Local 699*, 34 App. Div. 2d 1060, 312 N.Y.S.2d 403, 405 (1970).

■■ There can be no reasonable impression of bias unless it can be proved that Miller Engineering had a substantial interest in or relationship to the arbitration proceedings and upon remand it is incumbent upon Star Forge to prove the nexus. In this regard the Star Forge complaint suggests that Miller Engineering's performance on the project was in large part the subject matter of the controversy. This allegation poses an evidentiary inquiry into: the extent to which Miller Engineering was actually involved in the arbitration controversy, the extent to which an adverse evaluation of Miller Engineering's performance could affect its business affairs and reputation, and the extent to which the arbitrator's evaluation of Miller Engineering's work was reflected in the award to Freeport Construction.

There is also an evidentiary problem relative to the $56,800 which the award states shall be held in trust for Miller Engineering. Again the question presented is whether this fact reasonably creates an impression of bias against Star Forge. This court is not in a position to pass upon whether this provision serves to legally protect or benefit Miller Engineering at Star Forge's expense, and counsel have not argued this question. It appears, however, that the trust provision requires Freeport Construction to hold the specified amount in trust until its controversy with Miller Engineering is settled and at that time Miller Engineering will receive only that portion of the $56,800 which it can show is due to it. Depending upon a variety of factors including Freeport Construction's financial situation, this provision may or may not provide Miller Engineering with any protection or benefit.

Finally, the arbitrators seem to have evaluated Miller Engineering's electrical work and they have determined that Freeport Construction owes Miller Engineering $56,800. While it appears that Miller Engineering is not bound by the arbitrators' determination since it was not a party to the arbitration, there is still a question of whether Miller Engineering could benefit from an advisory determination in a subsequent settlement or court proceeding.

In addition to showing the nexus between the arbitration and the nonparty, Miller Engineering, Star Forge must prove the allegations it has made with respect to the business dealings between Stenstrom and Miller

Engineering to constitute a substantial relationship which reasonably creates a presumption of bias against Star Forge. In making its determination the trial court should consider "how significant, regular, recent, or continuing such a relationship was or is." (*St. Paul Insurance Companies v. Lusis*, 6 Wash. App. 205, 213, 492 P.2d 575, 580 (1971).) Depending upon the evidence the court may also take into account whether the Star Forge executive officers should have reasonably expected that Stenstrom would have had dealings in the ordinary course of business with some or all of the local contractors. *Garfield & Co. v. Wiest*, 432 F.2d 849, 854 (2d Cir. 1970); *Cook Industries, Inc. v. C. Itoh & Co.*, 449 F.2d 106, 108 (2d Cir. 1971).

Some mention should also be made relative to Stenstrom's alleged lack of candor in stating that he has "no present dealings" with Miller Engineering when in fact a few days later building permits were filed showing a business relationship relative to a skating rink project. Stenstrom's statement in this context was certainly misleading and to this extent it may be a factor together with other circumstances which might create a reasonable presumption of bias. (*Cf. Milliken Woolens, Inc. v. Weber Knit Sportswear, Inc.*, 11 App. Div. 2d 166, 202 N.Y.S.2d 431, 434-35 (1960).) On the other hand, the alleged misleading statement by itself cannot possibly create the reasonable presumption of bias if it cannot also be established that Miller Engineering's connection with the arbitration was substantial.[1]

■■ Freeport makes some note of the fact that this relationship occurred after the hearings. However, since it occurred prior to the entry of the arbitration award Stenstrom's continuing duty to disclose any relationship which would affect his partiality could not be excused. An arbitrator is, of course, under a continuing duty to disclose any interest or bias at any stage of the arbitration proceedings, and the failure to disclose a substantial interest creates an "appearance of bias," which, if proved, would be sufficient to vacate an award. *Commonwealth Coatings Corp. v. Continental Casualty Co.*, 393 U.S. 145, 150, 21 L. Ed. 2d 301, 305, 89 S. Ct. 337, 340 (1968); *International Brotherhood of Electrical Workers v. E. I. DuPont deNemours & Co.*, 420 F. Supp. 208, 211 (E.D. Va. 1970); The Code of Ethics for Commercial Arbitrators, Canon II(A)(2) (1974).

We therefore conclude that the trial court erred in granting summary

---

[1] There is no doubt that Stenstrom had an ethical duty to disclose his business relationship with Miller Engineering. The Code of Ethics for Commercial Arbitrators which has been drafted by the joint Committee of the American Arbitration Association and the American Bar Association states:

"Persons requested to serve as arbitrators should disclose any relationships which they personally have with ° ° ° any individual whom they have been told will be a witness." Canon II(A)(2)

See also Justice White's concurring opinion in *Commonwealth Coatings Corp.*, 393 U.S. 145, 152, 21 L. Ed. 2d 301, 306, 89 S. Ct. 337, 341.

judgment with respect to count II of Star Forge's complaint. Freeport's motion with respect to that count seeks to test the legal sufficiency of Star Forge's complaint and essentially does not attempt to have the court inquire into whether there is evidence to support the allegations made by Star Forge, which we have concluded states a sufficient cause of action to vacate the award. The pleadings raise an issue of material fact as to the scope and extent of arbitrator Stenstrom's dealing with Miller Engineering sufficient to foreclose summary judgment as to count II. *Board of Education v. Green Valley Builders, Inc.* 10 Ill. App. 3d 235, 237 (1973).[2]

### III

■■ Star Forge has also argued that the award should be vacated as against the "manifest weight of the law" because the arbitration panel did not accept its "contract price" defense based on the Mechanics' Lien Act (Ill. Rev. Stat. 1975, ch. 82, par. 21). It is well settled that an arbitration award will not be vacated on the ground that the arbitrators misinterpreted the applicable law. (*Del Bianco & Associates, Inc. v. Adam*, 6 Ill. App. 3d 286, 293 (1972); *National Railroad Passenger Corp. v. Chesapeake & Ohio Ry. Co.*, 551 F.2d 136, 143 (7th Cir. 1977).) And the Uniform Arbitration Act does not expressly recognize any remedy for an arbitrator's misapplication of law. (Ill. Ann. Stat., ch. 10, Introductory Note, at 401 (Smith-Hurd 1975).) Some Federal courts, however, have indicated that a manifest disregard of applicable law will permit a court to vacate an award. See, *e.g., San Martine Copania De Navetacion S.A. v. Saguenay Terminals, Ltd.*, 293 F.2d 796, 800-02 (9th Cir. 1961); *Office Supply, Republic of Korea v. New York Navigation Co.*, 469 F.2d 377, 379 (2d Cir. 1972); *cf. Sweet v. Steve's Cartage Co.*, 51 Ill. App. 3d 913, 915 (1977) ("gross errors of law").

We note that other courts have expressed serious reservations about this legal theory and even those courts which have adopted the view have concluded that the judicially created addition to the statute is "severely limited." (See *Office Supply*, 469 F.2d 377, 380; *National Railroad Passenger Corp.*, 551 F.2d 136, 143 n.9: *Sobel v. Hertz, Warner & Co.*, 469 F.2d 1211, 1214 (2d Cir. 1972); *I/S Stavborg v. National Metal Converters, Inc.*, 500 F.2d 424, 431 (2d Cir. 1974).) Assuming that at some juncture under some extreme circumstances an arbitrator's mistaken

---

[2] While Freeport's motion is captioned as one for summary judgment and the order of the trial court grants summary judgment, the motion might more properly be considered a motion for judgment on the pleadings since, as noted, it seeks principally to test the legal sufficiency of the complaint. (See *Tompkins v. France*, 21 Ill. App. 2d 227, 230-31 (1959). *Cf. Janes v. First Federal Savings & Loan Association*, 57 Ill. 2d 398, 406 (1974).) Even if considered as a judgment on the pleadings it would be improper because there are material unresolved facts which require that evidence be taken to resolve the issues. *Walker v. State Board of Elections*, 65 Ill. 2d 543, 552-53 (1976); *Habada v. Graft*, 33 Ill. App. 3d 810, 812 (1975).

application of law would require a court to vacate the award (*e.g.,* *Country Mutual Insurance Co. v. National Bank,* 109 Ill. App. 2d 133, 140 (1969))[3], this is clearly not such an instance. It does not appear that the arbitrators made any mistake because they refused to apply the provisions of the Mechanics' Lien Act inasmuch as there is no mechanic's lien claim pending between the parties to the arbitration proceedings.

For the reasons stated we reverse the order of the trial court which granted "summary judgment" to the Freeport Construction Company and remand the cause to the trial court for the purpose of conducting an evidentiary hearing with respect to the allegations in count II of the complaint on the issue of the "evident partiality" of the arbitrator. If the allegations are found to be proven, the trial court will enter an order vacating the arbitration award, and if not proven the trial court is directed to enter an order which confirms the award.

We affirm the trial court's granting of judgment on the pleadings with respect to count I.

Affirmed in part, reversed in part, and remanded with directions.

GUILD and WOODWARD, JJ., concur.

---

[3] While *Country Mutual* involved an arbitrator's misapplication of the applicable statute of limitations, the court vacated the award on the theory that the arbitrator exceeded his authority.