## AGREEMENT FOR ARBITRATION.

Circuit Court of Cuyahoga County.

B. W. ERNST v. WILLIAM McDOWELL ET AL.

Decided, November 27, 1911.

*Arbitration—Declaration that Party Will Not Stand by Award Does Not Amount to Revocation—Parol Award Sufficient—Disqualifying Interest of Arbitrator.*

1. The mere declaration of a party to an arbitration agreement, communicated to one or more of the arbitrators, that he will not stand by any decision they may make, is not alone sufficient to revoke the agreement to arbitrate.
2. If the arbitration submission does not expressly direct that the award be in writing, an oral award is sufficient, there being no statute requiring a written award.
3. The mere fact that one of the arbitrators named in an arbitration agreement is a creditor of one of the parties to it, is not sufficient to disqualify the arbitrator from serving as such and does not, of itself, require that the award made be set aside.

*Ford, Snyder & Tilden,* for plaintiff.
*Herrick & Hopkins* and *D. C. Parker,* contra.

MARVIN, J.; WINCH, J., and HENRY, J., concur.

The parties to this action, Ernst and McDowell, entered into a written agreement on the 6th day of April, 1909, which agreement reads as follows:

"CLEVELAND, O., April 6th, 1909.

"We, William McDowell and B. W. Ernst, both jointly and separately hereby agree that in view of a misunderstanding and disagreement in regard to a certain contract for work done at Upper Sandusky, said contract for work having been done by B. W. Ernst, who did not complete the same, William McDowell doing the unfinished portion of the work for B. W. Ernst and

completing said work in accordance with the plans and specifications of the engineer in charge representing the village of Upper Sandusky for whom the work was being done.

"Now there being a misunderstanding and disagreement in regard to the amount claimed by Mr. McDowell as due him for the completion of said work, we hereby agree to leave this disputed amount to the following named gentlemen, Mr. E. W. Sloan, A. F. Helm and H. C. Bradley, as arbitrators and also agree to abide by the decision rendered in regard to a settlement of all the questions in dispute. This finding of the arbiters to be final and no further action to be taken by either of us pertaining to this question in dispute.

"Witness our hands and signature this 6th day of April, 1909.

"Witness:                (Signed)   B. W. ERNST,
    "E. W. SLOAN,         (Signed)   WM. McDOWELL.
    "A. F. HELM,
    "H. C. BRADLEY."

On the same day the three men named as arbitrators met and agreed upon their award, but did not then reduce such award to writing. It will be noticed that the contract of submission does not require that the award be made in writing.

On the day the award was agreed upon, the defendant, Wm. McDowell, was apprised of what it was by one of the arbitrators. He was dissatisfied with the award, and either that evening or the next day gave notice in writing to two of said arbitrators, but not to the defendant, that he would not stand by any decision made by the arbitrators, giving as a reason that one of the arbitrators was an intimate friend of the plaintiff, and that he believed such arbitrator to be financially interested in the matter before him.

The arbitrators, however, reduced their award to writing, after receiving such notice, and furnished to each of the parties a copy of such writing, which reads as follows:

"April 7, 1909.

"MESSRS. B. W. ERNST AND WM. McDOWELL,

"*Gentlemen*: Your committee, appointed by you and mutually agreed upon to arbitrate the disputes and determine the compensation to be received by each in the sewer contract of Upper Sandusky, Ohio, which was started by Mr. B. W. Ernst and completed by Mr. W. McDowell, decides as follows:

"Mr. B. W. Ernst is to receive all the money now left on the work and now on deposit at the First National Bank of Upper Sandusky, approximately twenty-two hundred and five dollars ($2,205) as his share of the proceeds.   The same to be paid within ten days.

"Mr. Wm. McDowell is to complete any work now unfinished upon the contract, within the specified time allowed, and is to receive the one thousand dollars ($1,000) now held by the village of Upper Sandusky as guarantee for the completion of the contract, in accordance with the specifications, as his share of the proceeds.

"Your committee has carefully considered the evidence presented and it is their unanimous opinion that this decision does justice to both parties.

"Respectfully submitted,
"A. F. HELM,
"E. W. SLOAN,
"H. C. BRADLEY."

The defendant McDowell refuses to abide by said award, and has withdrawn from the bank where the money was on deposit, a large part thereof.

The present suit, under the amended petition, is to recover judgment against McDowell for a fixed amount of money claimed to be due under the award.

The original petition prayed for an injunction against the bank, to restrain it from paying any of the awarded money to McDowell, and for an order that it pay the same to the plaintiff. By the amended petition, however, it is shown that the bank has paid to the plaintiff all the money remaining in its hands, to-wit, $721.62; and so, as already said, the only relief now prayed, on the part of the plaintiff, is a judgment for money only.

The answer to this petition, however, filed by McDowell, raises the issues hereinafter discussed, and prays to have the contract of submission and the award set aside. and that the money paid by the bank to the plaintiff be recovered by McDowell.

The defendant McDowell says that he ought not to be bound by this award, because he says that before any award was made he repudiated the contract of arbitration, and so notified two of the arbitrators, Mr. Bradley and Mr. Helm.  He did not

notify Mr. Sloan, and as has already been said, he did not at that time notify Mr. Ernst.

That the award had been made, and that Mr. McDowell had been told what it was before he undertook to revoke the contract, we think is clear from the testimony of Mr. Helm, who says that the decision of the arbitrators was made on the same day that the hearing was had; that they never got together again about it; that he told Mr. McDowell what the decision was the day of the hearing, after the arbitrators had agreed, and before Mr. McDowell gave him any notice that he would not abide by the result. Later, that same evening, McDowell told him by 'phone that he had heard that Sloan was an intimate friend of Ernst and was perhaps financially interested in the result, and the next day Helm got a letter from McDowell to the same effect.

Mr. Bradley also says the award was agreed upon on the day of the hearing, which was at Mr. Bradley's office, before the arbitrators separated.

Mr. Helm says he told McDowell the exact terms of the award and what each party was to get, and on that same evening, and in that same interview before McDowell gave any notice either by 'phone or letter.

Though there may be doubt as to the exact contents of the written notice sent by McDowell to Bradley and Helm, we have what Willis McDowell, a son of the defendant, says is, if not an exact copy, a substantial copy of the notice. This notice first states that defendant has learned that Sloan is an intimate friend of Ernst, and that, to quote, "I also think he is financially interested. I will not stand by any decision made under these circumstances."

This language is sufficiently explicit to show that McDowell did not intend to abide by any award, but it may be doubted whether it amounts to a revocation of the contract of submission even if given before the award was made.

In *Brown* v. *Welker,* 41 Tenn., 197, the syllabus reads:

"After a question is submitted to the decision of arbitrators, by agreement, neither the power nor the duty of the arbitrators, to make an award can, in any way, be affected by the declara-

tion of one of the parties that he would not abide by his agreement. Such declarations are simply nugatory, unless the party revokes the authority conferred on the arbitrators to act in the premises.''

In this case the evidence showed that Brown, one of the parties to the contract of arbitration, said to Kincaid, one of the arbitrators, when on the way to the place of meeting for the arbitration, that he would not stand for it. Commenting on this, the court, in its opinion, page 200, uses this language:

''The error of the charge is in the assumption that the mere expression of a determination on the part of Brown *not to stand to the agreement,* put an end to the contract or was equivalent to a revocation of the authority of the arbitrators. Such was not the legal effect; he might have revoked the authority before it was executed by the arbitrators but if this were not done, neither the power nor authority and duty of the arbitrators to make an award could be affected in any way by the declaration of Brown that he would not abide by his agreement.''

But we are of opinion that, whatever its effect might have been, if given in time it came too late to be effective here.

When McDowell gave his notice that he would not stand by any decision made, the arbitrators had already made their decision, and that decision was the ''award.''

Anderson's Law Dictionary defines an award in matters of arbitration in these words: ''An award is the judgment of the arbitrator upon the matters submitted.''

Bouvier defines it as ''the judgment or decision of arbitrators or referees on a matter submitted to them.''

Second Ed. of Am. & Eng. Enc., 2d Vol., 722: It is said in the text: ''If the submission does not expressly direct or the law require the award to be in writing, an oral award is sufficient.'' This is supported by numerous cases cited in the foot-notes.

In 1889 it was enacted by the British Parliament that, unless a contrary intention is expressed in the submission, the arbitrators shall make their award in writing.

Commenting on this, it is said in the 9th Edition of *Russel on Arbitration and Award* at page 186:

"Formerly a parol award might have valid where the submission did not expressly provide that the award should be in writing, but since the arbitration act, a parol award will not be good unless," etc.

It is said in *Moore on Arbitration and Award,* at page 256, edition of 1872:

"In the absence of statutory restrictions, or of stipulations in the submission, and except where the right to be disposed of is, by its own nature, capable of being disposed of only by a sealed instrument, a verbal award will be good."

Having then reached the conclusion that McDowell never revoked the contract of submission, we come next to a consideration of the question of whether any arbitrator was disqualified. The claim on the part of the defendant is that one of the arbitrators was not qualified to act in that capacity.

The arbitrators in this case were not chosen in the usual way, but were all named by Ernst, and this was done at the suggestion of McDowell. The first man named by him was Sloan. This name he gave to McDowell several days before the written agreement was executed, which, as already said, was on the day of the hearing and decision by the arbitrators.

McDowell says in his testimony that he said to Ernst: "I will leave it to any three disinterested men that you pick out—I will let you pick them."

Ernst did pick the three, who acted. McDowell after having several days opportunity to learn as to the fitness of Sloan, at any rate, if not so long as to the others, voluntarily signed the contract of * * * submission. He testified that when the meeting took place with the arbitrators, "I asked them if any of them was interested or knew anything in regard to the case, and all that, and they all said they wasn't, first one and then the other."

Of course, McDowell should be held to this contract unless he was deceived or defrauded into executing it.

The facts as to the relations between Ernst and Sloan are that they were on friendly terms socially, and that Sloan had signed bonds for Ernst in one, probably two, instances in con-

nection with his getting contracts for work for city improvements. These bonds, however, had been taken care of long before this arbitration took place. At the time of the arbitration, however, Sloan held the note of Ernst for $1,200, which arose in this way: Ernst was bidding for jobs to be done for the city of Cleveland in the spring of 1909. He was obliged to accompany each bid with a bond or deposit of money, conditioned that if the work was awarded to him, he would enter into the contract for such work, giving proper bond for its faithful performance.

Sloan had a credit of $1,200 given to Ernst at the First National Bank of Cleveland, that amount being charged to Sloan's account, and he taking Ernst's note therefor. None of the money was taken from the bank by Ernst, save for deposit with the city when he bid for work. The note given Sloan was not due at the time of this award. It was paid when it became due, and that without any avails from this award.

Ernst deposited at his own suggestion with Sloan two policies of insurance on his life, one for $1,000 in the John Hancock Company, and one for $2,000 in the Massachusetts Mutual Life. Though the deposit of these policies may not have been in law a security, these parties probably supposed they were. Under these circumstances, can it be said that a fraud was perpetrated on McDowell, or that Sloan was not a disinterested person in the sense in which an arbitrator is required to be disinterested?

Authorities are numerous on the question of disqualification of arbitrators on account of interest in the matter submitted, or of special interest in one of the parties.

In the 5th Vol. of Am. & Eng. Enc. of Law and Practice, pp. 83 and 84, authorities are collected, both English and American, and the result is summed up in the text:

"To constitute grounds for setting aside the award, the bias must have been such as to furnish reasonable ground for believing that the arbitrator was improperly influenced.

"If the interest of the arbitrator was too remote and contingent to induce any reasonable suspicion that it could have influenced his decision, the award will not be set aside."

In *Russel on Arbitration and Award*, 9th Ed., it is said at page 93:

"If there is an engagement entered into between the arbitrator and one of the parties, unknown to the other party, which gives the arbitrator a direct pecuniary interest in deciding against the party who was ignorant of the engagement, the court will not enforce a submission to arbitration. The mere fact of owing a debt to or being a creditor of one of the parties is not such an interest as renders a person incompetent for the office."

So in *Morse on Arbitration and Award,* Ed. of 1872, it is said on page 100:

"A debtor or creditor of one of the parties to the submission is said not to be therefor necessarily incompetent to act as an arbitrator. It should be shown further that the debt is considerable, or that it is unsecured or that the debtor is in such circumstances that the decision of this case may appreciably affect his ability to pay the debt."

In support of the text last above quoted from Morse, and the preceding quotation from Russel, the case of *Morgan* v. *Morgan,* 1 Dowling, 611, is cited. In this case it appeared that an arbitrator was indebted to one of the parties. In commenting upon this, the court uses this language:

"No case has gone to the length of saying that an award can be set aside because the arbitrator was indebted to one of the parties."

To the same effect is the case of *Wallis* v. *Carpenter,* 13 Allen, 19. In this case one of the arbitrators was in debt to one of the parties. This was established by the evidence, and yet the court say, on page 24:

"There is no established fact which authorizes the suggestion that the existence of the debt creates partiality."

Taking into account the facts in this case, that the money for which Sloan held the note of Ernst was for money in the bank, which it was understood between them would be checked out only to deposit with the city from time to time, when bids were rejected, or in case bids were accepted, to be returned as soon as contracts were entered into, and that this arrangement was strictly carried out; that Sloan held the two insurance pol-

icies, which the parties supposed constituted security, and that no effort to conceal any fact from McDowell as to the relation of the two men, Sloan and Ernst; that Ernst told McDowell several days before the submission that he had selected Sloan; that McDowell entered into the written contract for submission of the controversy to these three men by name, we fail to find that any fraud was perpetrated on the defendant, which would justify the setting aside of the contract, or that either arbitrator had such interest in the result of the issue or any such interest in the plaintiff, as would justify setting it aside; and so the prayer of the defendant McDowell, that such contract and the award thereunder be set aside. is denied, and the plaintiff is given judgment for the amount fixed by the award, with interest, deducting therefrom the amount paid to him by the First National Bank of Upper Sandusky, as hereinbefore found, as of the date when such payment was made.