GERL CONSTRUCTION COMPANY, APPELLANT AND CROSS-APPELLEE, *v.* MEDINA COUNTY BOARD OF COMMISSIONERS, APPELLEE AND CROSS-APPELLANT.

(No. 48779—Decided April 15, 1985.)

*Squire, Sanders & Dempsey, Thomas G. Hermann* and *Thomas J. Hildebrandt,* for Gerl Construction Company.

*Thompson, Hine & Flory, Joseph S. Ruggie, Jr.,* and *Ralph Streza,* for Medina County Board of Commissioners.

ANN MCMANAMON, J. This is an appeal by plaintiff-appellant, Gerl Construction Company ("Gerl"), from a judgment of the Cuyahoga County Court of Common Pleas which denied the appellant's application to vacate an arbitration award and confirmed the award as rendered by the arbitrators.

On June 20, 1977, appellant and defendant-appellee, Medina County Board of Commissioners ("board"), entered into a contract for the construction of sewer lines on what came to be known as the "Wadsworth Project." This agreement included a provision requiring the submission of disputes to binding arbitration under the auspices of the American Arbitration Association ("AAA")

In accordance with this provision, Gerl filed a demand for arbitration on August 27, 1981, contending that it had encountered unforeseen and unusual construction difficulties during the course of performance. Additional compensation of $1,496,959.72 was sought from the board.

In January 1982, the AAA made an administrative appointment of one arbitrator, Stanley L. Censen. The parties were then given a list of seven names from which additional appointments were to be made. On January 21, 1982, Emil J. Biskup and Jack J. Bergson were selected from this list to complete the panel.[1]

Arbitration proceedings commenced in Cleveland, Ohio in April 1982. On July 1, 1982, the arbitrators, by a unanimous vote, awarded Gerl $78,936.96 as additional compensation. Thereafter, appellant filed this action seeking an order from the trial court vacating the arbitration award.

In its application, Gerl alleged that, prior to the arbitration and award, one of the arbitrators, Emil J. Biskup, had failed to reveal or disclose "that he had a contractual relationship for the performance of professional services * * * with defendant Medina County Board of Commissioners * * *."

On April 19, 1984, the matter was tried to the court which subsequently affirmed the award on May 23, 1984. Gerl timely appeals from this judgment citing one assignment of error:

"Where plaintiff presented competent, credible and unrebutted evidence establishing all elements necessary to vacate an arbitration award under Ohio Rev. Code § 2711.10; and defendant presented no evidence establishing any affirmative defenses; the trial court's judgment for defendant was against the manifest weight of the evidence and must be reversed."

The board by way of cross-appeal has cited four assignments of error for review:

"A. The trial court erred in failing to grant the county's motion to amend its answer.

"B. The trial court erred in failing to admit defendant's exhibits E, F, G, H, and I into evidence.

"C. The trial court should have entered judgment for the county because Gerl waived its right to object to Mr. Biskup's conduct.

"D. The trial court erred in deny-

---

[1] The record is silent as to how this selection was accomplished.

ing the county's motion to transfer this case to the Medina County Court of Common Pleas."

## I

The major issue presented by Gerl's appeal is whether the trial court erred in refusing to vacate the arbitrators' award.

As a general proposition courts have recognized that:

" 'It is the policy of the law to favor and encourage arbitration and every reasonable intendment will be indulged to give effect to such proceedings and to favor the regularity and integrity of the arbitrators' acts. * * *' *Campbell* v. *Automatic Die & Products Co.* (1954), 162 Ohio St. 321, 329 [55 O.O. 195]; *Dayton Teachers Assn.* v. *Dayton Bd. of Edn.* (1975), 41 Ohio St. 2d 127, 132 [70 O.O.2d 223]; *Brennan* v. *Brennan* (1955), 164 Ohio St. 29, 35-36 [57 O.O. 71]. Arbitration is favored because its purpose is to avoid needless and expensive litigation. *Springfield* v. *Walker* (1885), 42 Ohio St. 543, 546. Hence, '[a]t common law, the courts have almost uniformly refused to vacate an arbitrator's award because of an error of law or fact. It has been held that the arbitrator is the final judge of both law and facts, and that an award will not be set aside except upon a clear showing of fraud, misconduct or some other irregularity rendering the award unjust, inequitable, or unconscionable * * *, and that even a grossly erroneous decision is binding in the absence of fraud. * * *' (Citations omitted.) *Goodyear* v. *Local Union No. 200* (1975), 42 Ohio St. 2d 516, 522 [71 O.O.2d 509]." *Menardi* v. *Petrigalla* (1983), 11 Ohio App. 3d 9, 11.

R.C. 2711.10 delineates the circumstances under which the trial court may vacate an arbitration award. This section provides:

"In any of the following cases, the court of common pleas shall make an order vacating the award upon the application of any party to the arbitration if:

"(A) The award was procured by corruption, fraud, or undue means.

"(B) There was evident partiality or corruption on the part of the arbitrators, or any of them.

"(C) The arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

"(D) The arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

"If an award is vacated and the time within which the agreement required the award to be made has not expired, the court may direct a rehearing by the arbitrators."

Appellant contends that the trial court erred in not vacating the arbitration award on the basis that there was evident partiality and misconduct and/or fraud on the part of arbitrator Biskup.

Biskup is the president of Biskup, Rowe & Associates, Inc. ("BRA"), a Cleveland architectural firm. It is undisputed that between 1976 and early 1981, Biskup's firm performed architectural engineering services in Medina County as a subcontractor on the "Sewer District 500 Project" which involved construction of a waste water treatment plant unrelated to the project which is the subject of this litigation. As a result of its services, BRA received approximately $39,356 from the general contractors involved in the District 500 Project.

Kenneth Hotz, Medina County's Sanitary Engineer for twenty-seven years, testified that, during his tenure, the county had never enjoyed any direct contractual relationship with BRA, nor

had it played any role in BRA's selection and employment on the District 500 Project. Hotz further testified that aside from one phone call in 1976 concerning the general contractor's billing, his office had never had any personal contact with BRA or its employees, nor would he have been able to identify Biskup prior to the arbitration proceedings.

Charles J. Kraus, BRA's secretary-treasurer, testified that the firm became involved with the District 500 Project as a result of Biskup's association with the general contractor through a professional organization. BRA performed structural engineering on the project and all of its bills were submitted to the general contractor. Further, all of the work was performed in BRA's office and the firm's contact with others involved in the project was limited to the general contractor's employees.

In support of its contention that the arbitration award must be vacated, Gerl relies principally on *Polk* v. *Cleveland Ry. Co.* (1925), 20 Ohio App. 317, and *Commonwealth Coatings Corp.* v. *Continental Cas. Co.* (1968), 393 U.S. 145.

*Commonwealth* presents a case under Section 10 of the United States Arbitration Act (Section 10, Title 9, U.S. Code), where a third and neutral arbitrator failed to disclose that for a number of years he had performed services directly on behalf of one of the parties. Some of these services included the subject of the arbitration. Under those circumstances, the United States Supreme Court held that the arbitrator's failure to disclose his relationship required that the award be set aside because the arbitrator's failure constituted a manifest violation of the strict neutrality and fairness which Congress intended under the Arbitration Act.

*Polk, supra,* originated with a dispute between a railroad company and its union employees. The dispute was referred to an arbitration panel composed of five arbitrators. Two had been selected by the union, two by the company and a fifth, apparently, by mutual agreement. During the course of the arbitration, the two arbitrators selected by the company withdrew. The three remaining arbitrators found in favor of the union which subsequently brought suit for enforcement of the award in the common pleas court.

Both parties appealed the ruling of the trial court, which ruling is not reflected in the opinion. Upon appeal, this court held that there was fraud in the selection of the fifth arbitrator which justified nullification of the award. The *Polk* opinion, however, fails to set forth the facts and circumstances which warranted the court's conclusion.[2] It also fails to set forth any standard or rule of law upon which an arbitrator's conduct or relationship with a party can be measured.

However, prior to *Polk,* this court recognized that:

"Authorities are numerous on the question of disqualification of arbitrators on account of interest in the matter submitted, or of special interest in one of the parties.

"In the 5th Vol. of Am. & Eng. Enc. of Law and Practice, pp. 83 and 84, authorities are collected, both English and American, and the result is summed up in the test:

" 'To constitute grounds for setting aside the award, the bias must have been such as to furnish reasonable ground for believing that the arbitrator was improperly influenced.

" 'If the interest of the arbitrator was too remote and contingent to induce any reasonable suspicion that it could

---

[2] The opinion seems to suggest that the arbitrator in question demonstrated overt bias and prejudice against the company and had been the recipient of political indorsements by the union.

have influenced his decision, the award will not be set aside.'" *Ernst* v. *McDowell* (1911), 18 Ohio C.C. (N.S.) 360, 366.

Similarly, the New York Supreme Court, Appellate Division, in *Cross Properties, Inc.* v. *Gimbel Brothers, Inc.* (1962), 15 App. Div. 2d 913, at 914, 225 N.Y.Supp. 2d 1014, 1016, affirmed (1962), 12 N.Y. 2d 806, 236 N.Y.Supp. 2d 61, stated the general modern rule:

"* * * The type of relationship which would appear to disqualify is one from which it may not be unreasonable to infer an absence of impartiality, the presence of bias or the existence of some interest on the part of the arbitrator in the welfare of one of the parties."

The Vermont Supreme Court in *R.E. Bean Constr. Co.* v. *Middlebury Assoc.* (1980), 139 Vt. 200, at 207, 428 A. 2d 306, at 310, relied in part upon *Cross* when it commented:

"* * * An award should be vacated where undisclosed relationships create an impression of possible bias. However, if that rule is not 'to emasculate the policy of the law in favor of the finality of arbitration,' not every relationship will require that an award be vacated. *San Luis Obispo Bay Properties, Inc.* v. *Pacific Gas & Electric Co.*, 28 Cal. App.3d 556, 568, 104 Cal. Rptr. 733, 741 (1972). Only relationships from which one could reasonably infer bias, not those which are 'peripheral, superficial or insignificant,' will require vacating the award. *Cross Properties, Inc.* v. *Gimbel Brothers, Inc.*, 15 App. Div.2d 913, 914, 225 N.Y.S.2d 1014, 1016 (per curiam), aff'd mem., 12 N.Y.2d 806, 187 N.E.2d 129, 236 N.Y.S. 2d 61 (1962)."

It should be noted that the foregoing cases deal only with the direct relationship between the arbitrator and one of the parties. More analogous to the instant case is *Freeport Constr. Co.* v. *Star Forge, Inc.* (1978), 61 Ill. App. 3d 999, 1003-1004, 378 N.E.2d 558, 562, which notes:

"* * * While the case law indicates that an undisclosed relationship between an arbitrator and a nonparty may also 'be sufficient to create an impression of bias' (*San Luis Obispo Bay Properties, Inc.* v. *Pacific Gas & Electric Co.*, 28 Cal.App.3d 556, 104 Cal. Rptr. 733, 742 (1972); *McKinney Drilling Co.*, 32 Md.App. 205, 359 A.2d 100, 104), it is obvious that the nexus between the nonparty and the arbitration must be substantial in order to reasonably create such an impression. In the final analysis, these matters must be decided on a case-by-case basis depending on the facts. 28 Cal. App. 3d 556, 104 Cal. Rptr. 733, 742; *Colony Liquor Distributors, Inc.* v. *Teamsters Local 699*, 34 App.Div. 2d 1060, 312 N.Y.S.2d 403, 405 (1970)."

After careful consideration of these cases and other authorities cited by the parties, we find that the trial court did not err in refusing to vacate the award.

While the sum of money received by BRA for its services is not insubstantial, the receipt of these funds is in and of itself an insufficient basis to vacate the award. This fact must be considered in the totality of the circumstances in order to determine whether or not it demonstrates partiality or bias by Biskup.

The record reveals that the only connection between Biskup and the appellee is by way of BRA's role as a subcontractor on the one project we have noted, which is unrelated to the instant arbitration. BRA's performance on this project was terminated some two years prior to Biskup's arbitration appointment and over three fourths of the payments it received for its services occurred almost five years before Biskup's appointment. Medina County did not play any role in the selection of BRA on the District 500 Project, nor is there suggestion of any future expectancy by BRA as to contracts administered by the board.

Section 19 of the AAA's Construction Industry Arbitration Rules requires the neutral arbitrator to:

"* * * disclose to the AAA any circumstances likely to affect his or her impartiality, including any bias or any financial or personal interest in the result of the arbitration or any past or present relationship with the parties or their counsel. Upon receipt of such information from such arbitrator or other source, the AAA shall communicate such information to the parties, and, if it deems it appropriate to do so, to the arbitrator and others. Thereafter, the AAA shall determine whether the arbitrator should be disqualified and shall inform the parties of its decision, which shall be conclusive."

The AAA's notice of appointment sent to Biskup also provides:

"It is most important that the parties have complete confidence in the Arbitrator's impartiality. Therefore, please disclose any past or present relationship with the parties or their counsel, direct or indirect, whether financial, professional, social or other kind. Any doubt should be resolved in favor of disclosure. If you are aware of such relationship, please describe it on the back of this form. The AAA will call the facts to the attention of the parties' counsel."

In addition to the alleged improper relationship between Biskup and Medina County, Gerl also relies on Biskup's failure to comply with the above rule as a further ground for vacation of the award.

A similar failure was recently addressed by the Seventh Circuit Court of Appeals in *Merit Ins. Co.* v. *Leatherby Ins. Co.* (C.A. 7, 1983), 714 F.2d 673, certiorari denied (1983), 464 U.S. 1009, wherein that court held:

"* * * [E]ven if the failure to disclose was a material violation of the ethical standards applicable to arbitration proceedings, it does not follow that the arbitration award may be nullified judicially. Although we have great respect for the Commercial Arbitration Rules and the Code of Ethics for Arbitrators, they are not the proper starting point for an inquiry into an award's validity under section 10 of the United States Arbitration Act and Rule 60(b) of the Federal Rules of Civil Procedure. The arbitration rules and code do not have the force of law. * * * [T]o get the arbitration award set aside it must bring itself within the statute and the federal rule. The statute specifies limited grounds for setting aside an arbitration award. The only one relevant here is, 'Where there was evident partiality or corruption in the arbitrators, or either of them.' 9 U.S.C. § 10(b). * * * This is strong language. It makes the grounds for setting aside an arbitrator's award because of bias narrower than the grounds for disqualification in the arbitration rules and code, not to mention the statutes and ethical codes pertaining to judges. * * *" *Id.* at 680-681.

"Although it is difficult to extract from the cases more than a mood, the mood is one of reluctance to set aside arbitration awards for failure of the arbitrator to disclose a relationship with a party. See, e.g., *Andros Compania Maritima, S.A.* v. *Marc Rich Co., supra,* 579 F.2d at 700. In *Andros,* the arbitration award was confirmed although the neutral arbitrator, Nelson, had not disclosed that he had in the recent past sat on 19 arbitration panels with the president of one of the firms involved in the arbitration and in 12 of these panels the president had been one of the arbitators who had selected Nelson to be the neutral. Disqualification of the neutral arbitrator was also rejected in *International Produce, Inc.* v. *A/S Rosshavet,* 638 F.2d 548, 551 (2d Cir. 1981), even though, during the arbitration, he had been a witness in another case between the same law firms that were trying the arbitration matter before him. In *Middlesex Mutual Ins. Co.* v. *Levine,* 675 F.2d 1197 (11th Cir. 1982) (per curiam), an arbitration award was set aside for 'evident partiality,' but

there a company owned by the neutral arbitrator's family was entangled in a dispute with the parties to the litigation in which he personally had lost $85,000, and he also was under investigation for alleged unethical conduct involving those parties." *Id.* at 682.[3]

Since the record does not demonstrate evident partiality or corruption on Biskup's part, or that the unanimous award of the arbitrators was procured by corruption, fraud, undue means, or misconduct, the trial court was correct in denying Gerl's application to vacate the award.

The remaining arguments advanced by appellant in its appeal involve alleged error in the admission of evidence concerning the issue of waiver.

During opening argument appellee's counsel suggested that the forthcoming evidence would demonstrate that Gerl had waived any right to object to the arbitration because appellant had prior knowledge of BRA's subcontract work in Medina County. At that point, Gerl's counsel objected to the assertion of this defense because it had not been previously pleaded, to the prejudice of appellant. Both parties agreed to brief the issue and the trial court refrained from ruling on the matter, pending consideration of the parties' post-trial briefs.

Thereafter, during trial, the board attempted to introduce documentary evidence purporting to show that, prior to the commencement of arbitration, appellant's counsel was aware of BRA's involvement in the District 500 Project due to his law firm's representation of another engineering company.

The trial court refused to admit this evidence, apparently again reserving its ruling until after consideration of the post-trial briefs. Judgment was ultimately entered without any ruling of record concerning the matter.

In view of the fact that no ruling was made on the issue of waiver, nor any of appellee's evidence on this issue admitted, we must presume that the trial court rejected the waiver defense and appellee's proffered evidence. As a consequence, it is clear that appellant suffered no prejudice in this regard.

Appellant's assignment of error is not well-taken.

II

In its cross-appeal, appellee's first three cross-assignments of error concern the issue of waiver and will be consolidated for discussion.

In its first assignment of error the board argues that the trial court erred in failing to grant a motion to amend its answer in order to allow it to assert the defense of waiver.

Waiver is an affirmative defense that generally must be pleaded. *Globe Indemn. Co.* v. *Wassman* (1929), 120 Ohio St. 72. However, Civ. R. 15(B) does provide:

"When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment. Failure to amend as provided herein does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presenta-

---

[3] In its opinion the court also noted that "no significance" can be attached to a prospective arbitrator's omission in completing the panel data sheet because the sheet "does not indicate that the information sought is for the purpose of determining whether grounds for disqualification exist * * *." *Id.* at 678.

tion of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence."

It is appellee's contention that despite its original failure to plead waiver, under Civ. R. 15, the trial court should have permitted it to assert that defense at trial or, in the alternative, granted a continuance to alleviate any possible prejudice to Gerl.

At this point it must be noted that after careful review of the record, we are unable to find any formal trial or post-trial motion by the appellee to amend its answer. Apparently, appellee felt that this formality was accomplished by the presentation during its opening statement and by its subsequent agreement to submit a post-trial brief on the issue.

Assuming *arguendo* that a motion to amend was presented, we fail to find either that the trial court erred in excluding appellee's waiver evidence, or that the record demonstrates that Gerl waived any right to object to Biskup's appointment.

The thrust of appellee's waiver defense is that the law firm representing appellant acquired prior knowledge of BRA's subcontractor status through the law firm's representation of National Engineering Co. ("National"), one of the general contractors on the District 500 Project. Appellee urges that this knowledge must be imputed to Gerl, the law firm's client.

To support its contention, appellee proffered into the record: notes from various 1977 construction meetings concerning the District 500 Project which show National and BRA's involvement in the project; a page from a desk calendar allegedly belonging to a National executive, indicating a meeting with an attorney from the subject law firm; and a

letter from National to its predecessor contractor on the District 500 Project.

In addition to finding all of these exhibits to be objectionable hearsay, we find them to be irrelevant. Also, none of the evidence proffered by the board pertains to Emil Biskup in his individual capacity, links him to BRA, or demonstrates his personal involvement in the District 500 Project.

While it is generally recognized that a client will be affected by his attorney's notice or knowledge of facts, such information must be acquired in and during the transaction in which the attorney has been engaged. Consequently, a client is not bound by knowledge of the attorney not received in the course of or within the scope of his employment. See *Drury* v. *Franke* (1933), 247 Ky. 758, 798, 57 S.W.2d 969, 985; *Trentor* v. *Pothen* (1891), 46 Minn. 298, 49 N.W. 129. Further, a client will not be affected by notice or knowledge of facts acquired by an attorney while acting on behalf of another client. *Silbaugh* v. *Guardian Bldg. & Loan Assn.* (1940), 164 Ore. 286, 292, 97 P.2d 943, 944.

In the instant case, not only are two different clients involved but also two different legal proceedings. As a result, we fail to see how Gerl can be charged with knowledge of any facts allegedly acquired by one of several attorneys involved in the firm's representation of National.

Appellee's first, second and third cross-assignments of error are therefore overruled.

### III

Appellee argues in its final cross-assignment of error that the court erred in denying its motion to transfer this case to the Medina County Court of Common Pleas in accordance with the venue provisions set forth in Civ. R. 3(B).[4]

---

[4] Reporter's Note: Footnote 4, containing the text of Civ. R. 3(B), has been deleted from the reported opinion.

This rule must, however, be read in conjunction with Civ. R. 1 which in part provides:

"(A) These rules prescribe the procedure to be followed in all courts of this state in the exercise of civil jurisdiction at law or in equity, with the exceptions stated in subdivision (C) of this rule.

"* * *

"(C) These rules, to the extent that they would by their nature be clearly inapplicable, shall not apply to procedure (1) upon appeal to review any judgment, order or ruling, (2) in the appropriation of property, (3) in forcible entry and detainer, (4) in small claims matters under Chapter 1925, Revised Code, (5) in uniform reciprocal support actions, (6) in the commitment of the mentally ill, (7) in all other special statutory proceedings; provided, that where any statute provides for procedure by a general or specific reference to all the statutes governing procedure in civil actions such procedure shall be in accordance with these rules."

The Ohio Arbitration Act, R.C. Chapter 2711, is a special statutory proceeding which contains specific provisions for the enforcement and/or vacation of awards in arbitration proceedings within the purview of the Act. R.C. 2711.16 of this Chapter provides:

"Jurisdiction of judicial proceedings provided for by sections 2711.01 to 2711.14, inclusive, of the Revised Code, is generally in the courts of common pleas, and actions and proceedings brought under such sections shall be brought either in the court of common pleas of the county designated by the parties to the arbitration agreement as provided in section 2711.08 of the Revised Code, which designation is an irrevocable consent to the parties thereto to such jurisdiction, or, whether or not such designation has been made, in the court of common pleas of any county in which a party in interest resides or may be summoned, or if any party in interest is a corporation, in any county in which such corporation is situated, or has or had its principal office or place of business, or in which such corporation has an office or agent, or in any county in which a summons may be served upon the president, chairman or president of the board of directors or trustees, or other chief officer."

Clearly, as provided by Civ. R. 1, R.C. 2711.16 will prevail over the venue provisions set forth in Civ. R. 3(B).

A review of the record reveals that the arbitration was held and the award made in Cuyahoga County. Prior to the commencement of the instant action it does not appear that appellee objected to Cuyahoga County as the arbitration site. Under R.C. 2711.16, exclusive jurisdiction over the award was, therefore, vested in the Cuyahoga County Court of Common Pleas.

This assignment of error is not well-taken.

The judgment of the common pleas court confirming the award is affirmed.

*Judgment affirmed.*

JACKSON, P.J., and COX, J., concur.

COX, J., of the Seventh Appellate District, sitting by assignment in the Eighth Appellate District.