OPINION
{¶ 1} In 1998, Shook, Inc. ("Shook") and Corporate Interior Systems, Inc. ("CIS") entered into a construction agreement. The agreement provided for the arbitration of any disputes arising from the contract. A dispute arose about the payment owed under the contract, and CIS filed a demand for arbitration in March 2000. Shook answered and filed a counterclaim.
 {¶ 2} The arbitration resulted in an $110,840.57 award to Shook in October 2001. CIS did not pay this award, and Shook sought to confirm the award in the Montgomery County Court of Common Pleas in December 2001. CIS then challenged the arbitration award on the basis that a critical issue had not been decided and that the arbitrator had been biased. In the alternative, CIS asked that the award be stayed until other claims between the parties could be resolved. The trial court overruled CIS's motion to vacate the arbitration award or to stay its execution and sustained Shook's application to confirm the arbitration award.
 {¶ 3} CIS raises three assignments of error on appeal. In reviewing these assignments, we note that, in general, "the law encourages arbitration, and courts should strive `to favor the regularity and integrity of the arbitrator's acts.' * * * Judicial review of arbitration proceedings is extremely limited, and a court may not set aside an arbitrator's award except in the very limited circumstances set forth in R.C. 2711.10." (Citations omitted.) Princeton City School Dist.Bd. of Edn. v. Princeton Assn. of Classroom Educators, OEA/NEA (1999),134 Ohio App.3d 330, 332-333. See, also, Gerl Constr. Co. v. Medina Cty.Bd. of Commrs. (1985), 24 Ohio App.3d 59, 61.
 {¶ 4} CIS's first assignment of error is as follows.
 {¶ 5} "I. The Trial Court Should Have Vacated The Arbitration Award Pursuant To R.C. 2711.10, Because The Arbitrator Failed To Resolve A Crucial Issue Between The Parties That Would Allow For A `Final And Definite Award Upon The Subject Matter Submitted.'"
 {¶ 6} CIS claims that the arbitrator erred in concluding that an additional claim that it had filed in August 2001 for $39,582 was a new claim rather than an increase in the pending claim. CIS's request apparently related to unpaid change orders, and it claimed that it had not realized that the change orders were in dispute at the outset of the arbitration proceedings.
 {¶ 7} Rule 8 of the American Arbitration Association's Construction Industry Dispute Resolution Procedures provides:
 {¶ 8} "A party may at any time prior to the close of the hearing increase or decrease the amount of its claim or counterclaim. Any new or different claim or counterclaim, as opposed to an increase or decrease in the amount of a pending claim or counterclaim, shall be made in writing and filed with the AAA, and a copy shall be mailed to the other party, who shall have a period of ten (10) calendar days from the date of such mailing within which to file an answer with the AAA. After the arbitrator is appointed no new or different claim or counterclaim may be submitted to the arbitrator except with the arbitrator's consent."
 {¶ 9} It is undisputed that CIS did not file its claim for an additional $39,582 in accordance with Rule 8 and that it did not obtain the arbitrator's consent to submitting that claim. Thus, if the claim was properly classified as a "new or different claim," rather than an increase in the pending claim, CIS was not entitled to have the issue decided in these proceedings.
 {¶ 10} CIS characterizes its claim for an additional $39,582 as reflecting "errors and omissions in the original calculations." However, CIS also seems to concede that this amount was discreet from the damages it sought related to the original construction contract in that CIS did not originally believe this amount to be in dispute. While it might have been possible to resolve the dispute related to the change orders in the arbitration proceedings below, we are unpersuaded that this dispute was inextricably tied to the claims originally raised by CIS. As such, the arbitrator acted reasonably in concluding that the damages sought for change orders represented a new claim, rather than an increase in the pending claim, and in refusing to consider those claims because CIS had not complied with Rule 8.
 {¶ 11} CIS argues that, because the arbitrator heard evidence on the damages arising from the change orders, he should not have "ignored" this issue in rendering his decision. This argument misses the point that the arbitrator heard evidence about the change orders in order todetermine whether they constituted a new claim or an increase in the existing claim. Hearing evidence on this issue did not obligate the arbitrator to reach the merits of the claim, as CIS suggests. CIS also seems to suggest that Shook agreed to submit the additional dispute to the arbitrator. However, both Shook and CIS state in their briefs that Shook objected to the claim.
 {¶ 12} The first assignment of error is overruled.
 {¶ 13} "II. The Trial Court Should Have Vacated The Arbitration Award Pursuant To R.C. 2711.10 Because The Arbitrator Was Biased In Favor Of The Appellee Shook."
 {¶ 14} CIS argues that the arbitration award should have been vacated due to the appearance of partiality on the part of the arbitrator, who had been listed as a reference by Michael Hayslip. Shook had listed Hayslip as a potential expert witness in the proceedings, but Hayslip was not called to testify.
 {¶ 15} A trial court cannot vacate an arbitration award unless one of the criteria of R.C. 2711.10 is affirmatively shown. R.C. 2711.10(B) allows a trial court to vacate an arbitrator's award if "evident partiality or corruption" existed on the part of an arbitrator. Where the alleged bias is rooted in the arbitrator's relationship with a nonparty, "arbitration awards should be vacated if the undisclosed relationship creates an impression of possible bias. However, the relationship must be such that one could reasonably infer bias, not those which are peripheral, superficial, or insignificant * * *. The nexus between the nonparty and the arbitrator must be substantial enough to reasonably create an impression of bias." Williams v. Colejon Mechanical Corp.
(Nov. 22, 1995), Cuyahoga App. No. 68819, citing Gerl, 24 Ohio App.3d 59. The basis for the alleged bias must not be indirect, remote, or tenuous.Close v. Motorists Mut. Ins. Co. (1985), 21 Ohio App.3d 228, 230.
 {¶ 16} In our view, CIS's claim of partiality on the part of the arbitrator is totally unsubstantiated. The arbitrator apparently characterized his relationship with Hayslip as a professional one. Hayslip was not called to testify, and his opinions were not made known to the arbitrator. Although CIS characterizes Hayslip's failure to testify as "unfortunate" because it prevented the company from exploring the nature of his relationship with the arbitrator, the fact that Hayslip did not testify underscores to us the remote and tenuous nature of CIS's claim of bias. There is no evidence that the arbitrator's relationship with Hayslip was a significant one, and the trial court did not err in refusing to vacate the award due to bias.
 {¶ 17} The second assignment of error is overruled.
 {¶ 18} "III. The Trial Court Should Have, In The Alternative, Stayed Execution Of The Arbitration Award Pending Final Resolution Of All Claims By The Parties."
 {¶ 19} CIS claims that the trial court should have stayed the execution of the arbitration award while it pursued an arbitration related to the change orders because the resolution of the change order claim "could supersede the rights adjudicated" by the arbitration award. We disagree. At most, a future award in favor of CIS would offset the damages it owes to Shook, not "supersede" them. Ohio law does not preclude Shook from collecting on a valid judgment against CIS simply because another action between the parties is pending.
 {¶ 20} The third assignment of error is overruled.
 {¶ 21} The judgment of the trial court will be affirmed.
BROGAN, J. and GRADY, J., concur.