United States Court of Appeals,

Fifth Circuit.

No. 92-2108.

ATLANTIC AVIATION, INC., Plaintiff-Appellant,

v.

EBM GROUP, INC., Defendant-Appellee.

Jan. 19, 1994.

Appeal from the United States District Court for the Southern District of Texas.

Before POLITZ, Chief Judge, GARWOOD and DAVIS, Circuit Judges.

GARWOOD, Circuit Judge:

Plaintiff-appellant Atlantic Aviation Corporation (Atlantic) filed this action in state court in Houston, Texas, seeking to modify, correct, and confirm a commercial arbitration award. Defendant-appellee EBM Group, Inc. (EBM) removed the action on the basis of diversity jurisdiction and counter-claimed to have the arbitration award vacated. After a two-day bench trial, the district court entered a "take nothing" judgment against Atlantic, finding the award unenforceable for lack of finality. Atlantic appeals. We reverse and remand the case to the district court.

## Facts and Proceedings Below

This lawsuit arises out of an arbitration proceeding conducted pursuant to an arbitration clause in a contract entered into by Atlantic and EBM on February 8, 1989. The contract provided that Atlantic was to install a twenty-four place commuter-configured interior into a Gulfstream-1 aircraft owned by EBM. The contract price owed by EBM was $166,643. EBM made an initial payment of $55,000; the balance of $111,643 remains unpaid. Atlantic breached the contract when it did not complete the installation within the thirty-day period provided by the contract.[1]

---

[1] Atlantic exceeded the 30-day period by 222 days. EBM canceled the contract, claiming default under its terms, and sought possession of the aircraft. Atlantic refused, insisting on payment of the balance due under the contract. EBM claims that, under pressure to deliver the aircraft to its third party customer, it agreed to pay, and did in fact pay, $46,307.98 to Atlantic for costs outside the scope of the contract. EBM does not specify the nature of these costs on appeal, nor is the payment a factor in the issues presented to this Court.

In November 1989, EBM announced its intent to submit the dispute over the contract to an arbitration panel, as provided for in Article XII of the contract, which specified that contract disputes between the parties were to be submitted to a panel of three arbitrators. The members of the panel included Lloyd R. Cunningham, a Houston lawyer, chosen by Atlantic; Harry H. Herman, a Washington, D.C. engineer, appointed by EBM; and W. Marc Schwartz, a partner with Coopers & Lybrand in Houston, as the neutral arbitrator.

Also in November 1989, EBM executed a promissory note in the amount of $94,979,[2] payable to Atlantic within 10 days of the entry of the arbitration award, on the condition that Atlantic was the prevailing party and was awarded damages in that amount by the panel. EBM deposited the promissory note with an escrow agent.[3]

The arbitration panel held a hearing in Houston in May 1990. EBM claimed large damages for itself and third parties arising from the delay. Atlantic conceded that it had breached the contract but disclaimed liability for the consequential damages claimed by EBM, raising defenses of failure to prove actual damages, lack of foreseeability, and contractual limitation of damages. In addition, Atlantic counterclaimed for the amount remaining due under the contract. Following the hearing, EBM was permitted to amend its claims to include allegations of fraud and of violation of the Texas Deceptive Trade Practices Act (DTPA). The parties submitted post-hearing briefs to the arbitration panel.

The panel issued its ruling in February 1991. The award, issued in broad form, included four findings: (1) Atlantic had breached its contract with EBM by failing to deliver the aircraft within the time period specified; (2) EBM's recovery of damages for this breach was limited by the terms of the contract to $16,664; (3) EBM was awarded damages of $16,664; and (4) EBM's promissory note

[2]This sum was the amount of the balance due, $111,643, less $16,664 owed to EBM as delay compensation under the contract.

[3]There was some dispute below over whether EBM was obligated to obtain a letter of credit to replace the promissory note or whether EBM was merely obligated to use due diligence to obtain the letter of credit. The district court found that EBM attempted to replace the promissory note but was unable to do so. The court further found that the promissory note and the letter of credit, had one been obtained, were not intended as a form of payment, but rather as security pending the arbitration.

was "not an issue subject to the panel's deliberation" because "under its terms it is not due yet nor do its provisions call for arbitration by this panel." Mr. Herman, EBM's member of the panel, disagreed with the panel's findings on the amount of damages owed to EBM as a result of the delay (findings two and three).

The panel made no formal findings concerning the balance owed to Atlantic and its award failed to offset the delay damages awarded to EBM by the amount still owed by EBM to Atlantic under the contract. Atlantic moved the panel to modify or correct its ruling on the fourth issue, that of the promissory note, to reflect the balance owed to Atlantic.

When EBM indicated that it would not agree to further actions by the panel, Atlantic filed suit in state court, seeking to modify, correct, and confirm the arbitration award. EBM removed the case to the United States District Court for the Southern District of Texas on the basis of diversity of citizenship and counterclaimed to vacate and set aside the award. Following a two-day bench trial, the district court entered a judgment that Atlantic take nothing.

The district court declined to set aside the arbitration award as requested by EBM in its counterclaim on the grounds that EBM had not produced sufficient evidence warranting such action. The court found that the award was unenforceable for lack of finality because the panel had failed to consider and decide EBM's fraud and DTPA claims and Atlantic's arbitration counterclaim for the contract balance. The court declined to correct or modify the award, on the grounds that it could not do so without affecting the merits of the case. Instead, it remanded the matter for arbitration before a new panel.

Atlantic timely appealed from the judgment. EBM did not cross-appeal the district court's refusal to set aside the award.[4]

**Discussion**

I. Jurisdiction

As a preliminary matter, EBM contends that this Court lacks jurisdiction to hear this appeal.

---

[4]EBM interprets the district court's actions in directing a rehearing before a new panel as an order vacating the award; because of this interpretation, it saw no need for filing a cross-appeal.

EBM bases this argument upon application of the Texas General Arbitration Act, the law invoked by the parties before the district court, and upon the Uniform Arbitration Act, the law agreed upon by the parties in the contract to govern review of the arbitration award.[5]  Neither of these laws allow appeals from orders which both vacate an award *and* direct a rehearing of the dispute.  *See* TEX.REV.CIV.STAT.ANN. art. 238-2 § A (Vernon 1973) ("An appeal may be taken from:  ... (5) An order vacating an award without directing a rehearing...."); UNIFORM ARBITRATION ACT § 19(a) (same).

We determine that federal law controls our jurisdiction here.  Contrary to EBM's assertion that state law should apply because neither party relied on the Federal Arbitration Act (FAA) below, the federal statute governing arbitrations is "applicable to any arbitration agreement within the coverage of the Act." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 23, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983).

The FAA applies to, *inter alia,* "a contract evidencing a transaction involving commerce." 9 U.S.C. § 2.  "Commerce" is defined in the Act as

> "commerce among the several States or with foreign nations, or in any Territory of the United States or in the District of Columbia, or between any such Territory and another, or between any such Territory and any State or foreign nation, or between the District of Columbia and any State or Territory or foreign nation, [with the exception of certain employment contracts]."  9 U.S.C. § 1.

We have indicated that the term "commerce" refers to interstate or foreign commerce and is to be broadly construed.  *See Del E. Webb Constr. v. Richardson Hosp. Auth.,* 823 F.2d 145, 148 (5th Cir.1987).

If an arbitration agreement is within the coverage of the FAA, its provisions are applicable in state as well as federal courts.[6]  *Southland Corp. v. Keating,* 465 U.S. 1, 14-16, 104 S.Ct. 852,

---

[5]Article XII of the contract, the paragraph providing for arbitration, provided that Texas law would govern the agreement.  The paragraph provides specifically, however, that the arbitration award "shall be reviewable only as provided for under the Uniform Arbitration Act."

[6]If the action is in federal court, there must be an independent basis for federal jurisdiction, such as diversity of citizenship as in the instant case, as the FAA does not itself grant jurisdiction in the federal courts. *Moses H. Cone Memorial Hosp.,* 460 U.S. at 25, n. 32, 103 S.Ct. at 942, n. 32.

860-861, 79 L.Ed.2d 1 (1984). *See also* 13B C. WRIGHT, A. MILLER, & E. COOPER, FEDERAL PRACTICE AND PROCEDURE, § 3569 (2d ed. 1984) ("[E]ven in a diversity suit or an action in state court if a maritime transaction or one in interstate or foreign commerce is involved, the substantive rules contained in the Act, based as it is on the commerce and admiralty powers, are to be applied regardless of state law").

Furthermore, the FAA governs judicial review of arbitration proceedings notwithstanding any choice of law provision or state law to the contrary. *Mesa Operating Ltd. Partnership v. Louisiana Intrastate Gas Corp.,* 797 F.2d 238, 243-244 (5th Cir.1986) ("[T]he existence of commerce under the FAA is dispositive with respect to the law which governs arbitrability even where the parties contemplated state law governance"). *See also Northern Illinois Gas Co. v. Airco Indus. Gases,* 676 F.2d 270, 274-275 (7th Cir.1982) ("Notwithstanding the parties' choice of law provision in their contract calling for application of Illinois law, and irrespective of the fact that this is a diversity case, federal arbitration law governs the analysis of arbitration provisions in any contract evidencing a transaction in interstate commerce.").

EBM asserts that the contract does not involve commerce because the work was to be performed solely within the state of Texas. We disagree. This Court has held that a contract may involve commerce under the FAA if the parties engaged in the performance of contract activities are citizens of different states, where such a contract involves interstate travel of both personnel and payments. *Mesa Operating Ltd. Partnership,* 797 F.2d at 243. Under this reasoning, the contract between Atlantic and EBM unquestionably involved commerce. Atlantic is incorporated and has its principal place of business in Delaware; EBM is a New York corporation with its principal place of business in Washington, D.C. Atlantic operates a fixed-base aircraft supply and maintenance operation at Hobby Airport in Houston, Texas, where the contract work was performed. The contract was negotiated in interstate commerce and involved interstate payments by EBM to Atlantic. Atlantic's work on the aircraft was subject to the approval of the Federal Aviation Agency, an agency with jurisdiction over federal aircraft regulations. Furthermore, although the contract provided for primary delivery at the airport in Houston, the contract also allowed delivery, at the option of EBM,

"at any airport in the continental United States." Thus, the contract expressly contemplated interstate performance. Finally, we note that, although not incorporated into the Atlantic-EBM contract, EBM had contracted to sell the modified aircraft to a company in Europe.

Because we hold that the contract between EBM and Atlantic for the refurbishing of the aircraft is a contract involving commerce, as defined in the FAA, federal arbitration law governs our appellate jurisdiction over this matter. 9 U.S.C. § 16(a); *see also Forsythe Int'l, S.A. v. Gibbs Oil Co. of Texas,* 915 F.2d 1017, 1020 (5th Cir.1990). The FAA does not distinguish between orders vacating arbitration awards without directing a rehearing and those orders which vacate awards and direct a rehearing of the arbitration dispute; both are appealable. 9 U.S.C. § 16(a)(1)(E).

The district court's action in ordering a rehearing of this dispute before a new arbitration panel does not limit our jurisdiction over this appeal.

II. Review of the District Court Judgment

*A. Finality of the arbitration award*

The district court found that the panel failed to decide EBM's claims of fraud and DTPA violations and Atlantic's counterclaim for the balance due under the contract. We assume, *arguendo,* that review of these findings is for clear error.[7] *Pullman-Standard v. Swint,* 456 U.S. 273, 286, 102 S.Ct. 1781, 1789, 72 L.Ed.2d 66 (1982).

We determine that the arbitration panel did consider and decide all the issues presented.[8]

---

[7]This Court in *Forsythe* rejected the clearly erroneous standard in favor of a *de novo* review, as more in line with the federal policy supporting arbitration. 915 F.2d at 1021. At issue in *Forsythe,* however, was the fairness of the arbitration proceedings, an issue which we held to be a mixed question of law and fact. The question of whether an arbitration panel addressed all the issues before it, however, may be a more purely factual inquiry properly reviewed under the more lenient standard. Clear error is, in any event, the appropriate standard as to determinations of concrete, historical facts.

[8]We also note than an omission to address all issues does not necessarily justify setting an award aside if the decision of the arbitration panel rests on an adequate basis. *Forsythe Int'l,* 915 F.2d at 1023.

Counsel for EBM has brought our attention to the case of *McKinney Drilling Co. v. Mach I Ltd. Partnership,* 32 Md.App. 205, 359 A.2d 100 (1976), a case in which the appellate court affirmed a summary judgment vacating an arbitration award on the grounds that the arbitrator had not considered all issues before him. Unlike the instant case, however, the parties in McKinney *did not dispute that the arbitrator erred in not*

Although the broadly stated form of the arbitration award does not expressly reveal the panel's decisions on each of the issues submitted, it is clear from the testimony of the arbitrators that the panel members considered and decided all of the issues.

Mr. Cunningham, Atlantic's arbitrator, and Mr. Schwartz, the neutral member of the panel, testified unequivocally that all issues were decided, specifically the issues of fraud, DTPA, and Atlantic's counterclaim.[9]

---

*addressing certain issues.*

[9]Mr. Cunningham testified as follows:

> "Q. Number 7, sir, "Utilizing the legal definition and elements of the wrong known as fraud as it exists in the State of Texas, is Atlantic Aviation liable to EBM Group for actionable fraud?' Was that—was that issue discussed on the first day that you met, on the 13th of February?
>
> A. It was discussed, yes, sir.
>
> "Q. Okay. But, in any event, at some point in time, Issue 7 [the fraud issue] was discussed; is that correct?
>
> A. Yes, it was.
>
> Q. And what was said about Issue 7?
>
> A. We didn't believe that there was a basis for actionable fraud.
>
> "Q. Where is the decision that there was no actionable fraud recorded?
>
> A. ... If it's in the award, it's not on the face of that one page, Exhibit 42 [the arbitrators' ruling], but it's clearly what we found in the deliberations.
>
> "Q. Now, with respect to Issue 12, sir, the Texas Deceptive Trade Practice Act, this was specifically discussed and was found that there was no violation of the DTPA; is that correct?
>
> A. That's true.... I have a general recollection about—the DTPA thing was a real mystery, but we found there was no basis for a DTPA claim anyway.
>
> Q. Why?
>
> A. Basically, because we found no basis for fraud and the only other basis, as I understand it, that would have been available to you under the DTPA would have been involved in a breach of warranty.
>
> And, here again, we felt that the express terms of that paragraph limiting the risk of Atlantic for this $7,000 profit would be a loss of $16,000 and, so, the expressed agreement of the parties, you know, was understood to control that

The trial testimony of EBM's arbitrator, Mr. Herman, is contradictory. He claimed in a general manner that the panel did not consider these issues, but his more specific testimony, describing the panel deliberations, was that the panel did address and decide the fraud and DTPA claims.[10] Mr. Herman was obviously frustrated with the manner in which some of these issues were

particular risk. And that's the way we adjudicated it.

"THE COURT: All right. Did you consider the DTPA during your deliberations?

THE WITNESS: Absolutely. I think I testified to that before."

Mr. Schwartz testified in a similar vein:

"Q. Would it be fair to say, however, that you did consider all the issues that the parties had submitted to the panel?

A. Yes.

"Q. So, basically, Exhibit Number 42 [the arbitrators' ruling] is the entirety of the award with respect to all the issues and all the claims, regardless of what they were?

A. Yes. We thought we covered them when we issued that award.

Q. Nothing is specifically said about any of these other issues?

A. No. We went down by one and issued an opinion as to each of the issues.

"Q. ... Issue Number 7, sir, the legal definition and elements known as fraud, was that discussed?

A. Yes.

Q. Was there a specific finding made with respect to that issue?

A. Yes.

"Q. Do you think Issue Number 13 [the issue of Atlantic's counterclaim] was resolved?

A. From the standpoint of what we believe was our responsibility, yes."

[10]Mr. Herman testified:

"Q. At the second day of meeting, sir, what transpired?

A. Well, the first item we discussed was Item Number 7, which was the fraud issue.

"A. ... So, you know, I felt that there was a very strong case that should be

discussed and clearly disappointed with the results of the arbitration proceedings.[11] His own unretracted admissions that these issues were discussed, however, belies EBM's claim that the panel's ruling did not address all the issues presented.

In light of the fact that each of the three arbitrators admitted that the issues were considered, the district court's finding that not all the issues had been discussed by the panel was clearly erroneous.

*B. Correction of the arbitration award*

Judicial review of an arbitration award is extremely limited; courts should defer to the arbitrators' resolution of the dispute whenever possible. *Anderman/Smith Operating Co. v. Tennessee Gas Pipeline Co.,* 918 F.2d 1215, 1218 (5th Cir.1990), *cert. denied,* --- U.S. ----, 111 S.Ct. 2799, 115 L.Ed.2d 972 (1991). Review of the district court's judgment is *de novo,* enabling this Court to determine whether the district court accorded sufficient deference to the arbitrators'

---

considered for fraud, but they just white-washed it. And they finally said that Mr. Masciadri should have known because he was probably every bit as smart as Mr. Christopher was and that he knew it was a gamble and a risk when he went into it and that there was no fraud.

"A. Well, we were about ready to adjourn—in fact, we had literally adjourned and I raised the question about the DTPA. I think—I don't remember which issue it was.

Q. Issue 12?

A. Yeah, Issue 12. And, so, we sort of reconvened. Everybody came back in the room and sat down. And Mr. Cunningham right away spoke up and said, "Oh. Well, DTPA can't apply because we've just decided there's no fraud and, in order to have DTPA apply, there has to be fraud.'

"A. And the [DTPA] issue—I think it was Issue Number 12, wasn't—wasn't discussed in any substantive amount. It was discussed very, very briefly.

When I said that there were discussions, they were not the kind of discussions that were meaningful."

[11]EBM's contention before the arbitration panel was that its damages resulting from the delay were not limited by any provision in the contract and could include consequential damages arising from EBM's failure timely to deliver the aircraft to its ultimate purchaser. EBM requested damages of $1.3 million in the arbitration proceedings. Instead, the panel decided that a clause in the delay provision of the contract limited damages stemming from delay to $16,664 and awarded only that amount to EBM.

decision. *Forsythe Int'l,* 915 F.2d at 1020-1021 (5th Cir.1990).

Atlantic argued before the district court that the arbitration panel's failure to award Atlantic the balance due under the contract was a technical error and requested the district court to modify or correct the award to reflect the panel's intentions on this undisputed issue. Apparently, the arbitrators interpreted the promissory note executed by EBM to be unconditional payment to Atlantic for the remaining balance due under the contract. In reality, the note was conditioned upon the panel's entering an award in that amount to Atlantic; the note was surety for an anticipated award and not payment of the amount owed. The panel also construed the arbitration clause of the contract to limit its power to award payments to the parties.

It is clear, notwithstanding the confusion of the panel regarding the promissory note and the arbitration clause, that at least two members of the panel[12] intended for the award to EBM for delay damages to be offset against the balance owed by EBM to Atlantic under the contract.[13] Furthermore, it is undisputed that EBM owes $111,643 to Atlantic for the completion of the contract. In its proposed Findings of Fact and Conclusions of Law, submitted to the arbitration panel, EBM stated:

> "Atlantic did deliver Serial No. 173, with [a supplemental type certificate], on November 9, 1989. As such, it completed its work, and should be paid the balance of the contract price. Under these circumstances, that would involve a set-off against EBM's claims, and EBM would agree that such a set-off would be equitable." Plaintiff's Exhibit 33, page 62.

In addition, testimony of Mr. Schwartz and Mr. Cunningham reveals that there was no dispute concerning the $111,643 owed to Atlantic.[14]

---

[12]Article 227 of the Texas General Arbitration Act provides that the powers of the arbitrators may be exercised by a majority of the panel members unless otherwise provided by agreement or by the Act itself. TEX.REV.CIV.STAT.ANN. art. 227 (Vernon 1973).

[13]Mr. Cunningham testified: "I did not understand that the 111 was being submitted to us for a decision because nobody disputed it."

Mr. Schwartz stated: "I don't recall the reasoning why we concluded that it's not yet under its provisions. It may be that the fact that we didn't award—there were no damages awarded Atlantic, because Atlantic already—had received—the note was payment...."

[14]Mr. Cunningham asserted:

The Texas General Arbitration Act provides that a court *shall* modify or correct an award where: (1) there was an evident miscalculation of figures or other descriptive mistake; (2) the arbitrators entered an award upon a matter not submitted to them, the correction of which would not affect the merits of the decision upon the issues submitted; or (3) the award is imperfect in a matter of form, not affecting the merits of the controversy.[15] TEX.REV.CIV.STAT.ANN. art. 238 § A (Vernon 1973).

Atlantic suggests that the omission of a ruling on the balance due could have been corrected by the district court under any of the three circumstances set forth in the Texas General Arbitration

---

"There's one thing that's not disputed here, $111,000. That's sitting over here. Everybody agrees it's due and owing. The question is what damages is EBM entitled to. Are they entitled to a million three or some lesser amount all the way down to $16,600 under the express provisions of, I guess, Article 4....

"Certain things between the parties were not in dispute. I can't say that they were stipulated, but they certainly were not disputed.

One of those was the fact that the payment obligation of EBM for services rendered pursuant to the terms of the contract to convert this plane was not paid in full....

Similarly, Atlantic never disputed that they failed to deliver the airplane for [220 days] after the initiation of the work. Those two factors were simply not in dispute."

Likewise, Mr. Schwartz stated:

"Q. ... The way you understood the award, Atlantic would be owed the balance of the contract money, less the damages that you had awarded in favor of EBM?

"A. That's the way I understood.

"Q. ... According to your recollection, wasn't it undisputed that EBM owed Atlantic $111,000 under the contract?

"A. That's my recollection.

"Q. There was no dispute in the evidence about that?

"A. Under the contract terms, it's abstracting from EBM's other claim. I don't think that was ever in question."

[15]The FAA's provision for modification or correction of arbitration awards is substantially the same as the Texas General Arbitration Act. *See* 9 U.S.C. § 11.

Act.[16] It argues that the arbitrators erroneously considered the issue of the promissory note (panel finding number four) as being a matter not before them. It contends that substitution of a finding on the undisputed issue of the contract balance would not affect the merits of the decision and would be proper under subdivision (2) above. Atlantic also argues that correction would be proper under subdivision (1), viewing the failure to offset as a miscalculation, or under subdivision (3), viewing the award as imperfect in form.

We find that the failure of the panel to award the balance remaining under the contract to Atlantic was in essence a clerical error which may be corrected without disturbing the merits of the arbitrators' decision. Neither party disputed that the money was owed, and the testimony of a majority of the arbitrators reveals that it was the panel's intention to offset the amount awarded to EBM by the amount EBM still owed to Atlantic. Correcting the award to reflect this intention neither changes the panel's findings that Atlantic breached its duty timely to deliver the aircraft to EBM nor affects the panel's award of $16,664 to EBM.

We reverse the district court's ruling that it could not modify or correct the arbitration award without affecting the merits of the dispute. Upon remand, the district court should enter an order, correcting the arbitrator's decision to reflect the $111,643 owed by EBM to Atlantic.

Because we reverse and remand this dispute to the district court for modification of the arbitration award, we need not address the propriety of the district court's remanding the matter to a new panel of arbitrators rather than to the original panel.[17]

**Conclusion**

Because the parties do not dispute that EBM owes Atlantic $111,643 for the completion of the contract, the district court should modify the arbitration award to offset the amount owed to

---

[16]EBM seems to claim that the district court could not modify or correct the award because it was unenforceable for lack of finality, and thus a modification or correction would affect the merits of the dispute. As discussed above, however, the district court's finding that the panel failed to address all issues before it was clearly erroneous.

[17]EBM does not allege that the business and social relationship established between Mr. Cunningham and Mr. Schwartz *following* the arbitration in any way tainted the original arbitration proceedings. Instead, EBM contends that, in light of this subsequent relationship, the district court acted properly in not remanding the arbitration dispute to the same panel.

Atlantic by the amount awarded EBM. We therefore REVERSE and REMAND to the district court for the entry of an order in accordance with this opinion.

REVERSED AND REMANDED.

* * * * * *

* * * * * *

* * * * * *

* * * * * *

* * * * * *

* * * * * *

* * * * * *

* * * * * *

* * * * * *

* * * * * *

* * * * * *

* * * * * *