**AMERICAN NATIONAL INSURANCE COMPANY, Plaintiff,**

v.

**EVEREST REINSURANCE COMPANY, Defendant.**

**No. Civ.A. G–01–806.**

United States District Court, S.D. Texas, Galveston Division.

Jan. 11, 2002.

Janet LaRene Wells Rushing, Greer Herz & Adams, Galveston, TX, for plaintiff.

William Albert Harrison, Griggs & Harrison, Houston, TX, for defendant.

### *ORDER CONFIRMING ARBITRATION AWARD*

KENT, District Judge.

Plaintiff American National Insurance Company ("ANICO") was the insurer of a medical stop loss program administered by a third-party underwriting manager, Ahrens Financial Systems, Inc. ANICO retained a part interest in the program and a portion of the remainder was reinsured by Defendant Everest Reinsurance Company ("Everest") pursuant to a Reinsurance Contract. Pursuant to the Reinsurance Contract's arbitration provision ("Arbitration Clause"), Everest demanded arbitration against ANICO in August 2001 to settle a dispute over Everest's request to audit ANICO's agent. Shortly thereafter, ANICO counter-demanded arbitration against Everest.

Upon making its arbitration demand, Everest selected Ronald L. Wobbeking ("Wobbeking"), an actuary with extensive expertise in health and medical insurance, as its party-appointed arbitrator. Rodney D. Moore ("Moore"), an attorney with substantial experience in the insurance and reinsurance field, was ANICO's party-appointed representative. The third arbitrator and panel umpire was Robert M. Magino ("Magino"). Magino, an experienced reinsurance arbitrator, was selected by agreement of ANICO and Everest from a list submitted by the American Arbitration Association.

Prior to the arbitration proceedings, the Parties submitted well over 200 pages of briefs, over 500 exhibits accompanying the briefs, expert reports and an audit report to the three arbitrators. The arbitration panel ("Panel") also received approximately seven hours of videotape testimony and several hundred pages of deposition testimony for pre-hearing review. The six-day arbitration took place in Galveston, Texas during November of 2001. During the lengthy arbitration, the Panel heard approximately fifty hours of testimony from approximately twenty live witnesses and received over one thousand pages of documents into evidence.

At the conclusion of the arbitration proceedings, the Panel members shared a seventy-mile automobile ride from Galveston to George Bush Intercontinental Airport during which time they discussed their respective positions regarding the arbitration's outcome.[1] After parting ways at the airport, the Panel members continued their communications by e-mail until November 29, 2001, at which time Magino presented the Parties with the arbitration award ("Award"). The Award, dated November 30, 2001, was signed by Magino

"on behalf of a majority of the Panel" and directed Everest to pay ANICO a specified sum, plus pre-judgment interest.

Three days after the Award was rendered, Wobbeking issued a dissenting opinion which made note of the voluminous record developed at the hearing and numerous issues the Panel members had allegedly failed to resolve before issuing the Award. Wobbeking further stated that "the Panel did not deliberate on any of these issues ... The Panel has not had any discussions on the issues of this arbitration" and expressed his belief that "a great miscarriage of justice has been done."

Now before the Court is ANICO's December 7, 2001 Application for Order to Confirm the Arbitration Award. In the Application, ANICO requests that the Court confirm the November 30, 2001 Award signed by Magino. Everest's First Amended Cross–Application to Vacate the Arbitration Award, filed December 19, 2001, and ANICO's Response thereto, are also presently before the Court. In its First Amended Cross–Application, Everest alleges that the Award was issued without deliberation and consideration of key evidence by the Panel. Primarily, Everest alleges that "the arbitrators had no discussions amongst themselves about the evidence and the issues before the Hearing or during the course of the Hearing" and Mangino "did not review the IIAS Audit report that contained the primary evidence in support of the breach of contract claims." Everest also alleges that the Award is arbitrary, capricious and in manifest disregard of the law and requests that the award be vacated on grounds that "the majority of the Panel exceeded its contractual authority under the Reinsurance Agreement."

---

1. The Parties dispute the length of this exchange. Everest alleges that the Panel members talked for no more than five minutes, while ANICO contends that the discussions were significantly longer.

In response, ANICO provides the sworn declarations of Magino and Moore—each indicating that the panel heard and considered all of the evidence presented to the Panel before and during the evidentiary hearing and fully discussed the Award before it was released.[2] ANICO contends that (1) the Panel did indeed deliberate and that a majority of the Panel (Magino and Moore) issued an award consistent with their obligations under the Arbitration Clause; (2) the Award was not arbitrary or capricious because "a tremendous amount of evidence was presented to the Panel with respect to each issue and each issue was fully briefed"; and (3) Wobbeking "expressed his views fully and freely, and while the other arbitrators considered Mr. Wobbeking's arguments, they simply disagreed with those views." ANICO also highlights the fact that, at the conclusion of the hearing, lead counsel for both Everest and ANICO indicated that they were satisfied with the manner in which the arbitration proceedings had been carried out.

■ As a general rule, a district court's review of an arbitration award is extraordinarily narrow. See *Gateway Technologies v. MCI Telecommunications,* 64 F.3d 993, 996 (5th Cir.1995) (citing *Antwine v. Prudential Bache Securities, Inc.,* 899 F.2d 410, 413 (5th Cir.1990)). The Fifth Circuit instructs that "courts should defer to the arbitrators resolution of the dispute whenever possible." *Atlantic Aviation, Inc. v. EBM Group, Inc.,* 11 F.3d 1276, 1282 (5th Cir.1994) (citing *Anderman/Smith Operating Co. v. Tennessee*

*Gas Pipeline Co.,* 918 F.2d 1215, 1218 (5th Cir.1990)). In a proceeding to confirm or vacate an arbitration award, the Federal Arbitration Act ("FAA") circumscribes the review of the court, providing that an award shall not be vacated unless: (1) the award was procured by corruption, fraud or undue means; (2) there is evidence of partiality or corruption among the arbitrators; (3) the arbitrators were guilty of misconduct that prejudiced the rights of one of the parties; or (4) the arbitrators exceeded their powers. *Gateway,* 64 F.3d at 996 (citing 9 U.S.C. § 10(a)(1)–(4)). Indeed, the Supreme Court has emphatically stated that "[a]s long as [an] arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error *does not suffice* to overturn his decision." *United Paperworkers Int'l Union v. Misco, Inc.,* 484 U.S. 29, 38, 108 S.Ct. 364, 370–71, 98 L.Ed.2d 286 (1987) (emphasis added).

■ After very carefully reviewing the substantial and well-prepared submissions of both parties, the Court concludes that the Award issued by the Panel should not be disturbed. First, the Arbitration Clause provided that "[t]he decision in writing of any two arbitrators when filed with the contracting parties, shall be final and binding on both parties." Pursuant to this provision, two of the three arbitrators (who both possessed significant reinsurance industry and arbitration experience) filed the Award as required. Notably, the Arbitration Clause does not require that all three arbitrators concur in the Award.[3]

2. Furthermore, Magino avers that "[a]t no point in the deliberations was Mr. Wobbeking excluded. He vigorously expressed his views, both orally and in the various e-mails that were circulated to the panel. While respecting Mr. Wobbeking's views, I respectfully disagreed with them, as did Mr. Moore." Moreover, Moore avers that "Mr. Wobbeking and I

both provided our views openly, freely and candidly. This was not a five minute discussion ... Our discussions continued almost throughout the duration of our trip from Galveston to the airport."

3. Everest contends that Magino decided the case on his own, consulting the other two

Secondly, the Courts accepts both Magino and Moore's averments that they heard and considered all of the evidence.[4] The Court acknowledges Everest's concerns over the minimal communication between Panel members after the conclusion of the proceedings, but nonetheless, the Court finds that these concerns do not rise to the level of "injustice." While the Court does not hereby particularly endorse such limited post-hearing communication between arbitrators, in this situation the Court finds the amount of post-hearing Panel deliberation completely acceptable. After all, the Panel had just spent a tremendous amount of time together during the complex and lengthy arbitration and had already considered voluminous evidence presented by both Parties in the form of documents and live testimony.[5] The Panel members were highly experienced seasoned arbitrators and thoroughly familiar with the insurance industry. Thus, the Court finds it eminently reasonable that they were able to reach their conclusions quickly upon conclusion of the proceedings and, in doing so, the Panel members did not engage in any form of misconduct or exceed the scope of their powers.

Next, the Court finds that the Panel's Award was not issued in manifest disregard of the law. More specifically, the Court finds that the relevant facts and the pertinent provisions of the Reinsurance Contract provide a reasonable basis for the Award. Lastly, the Court concludes that there is absolutely no evidence that the Award was procured by corruption, fraud or undue means or that the Panel members were partial or corrupt. The evidence merely suggests a severe case of sour grapes. Apparently, Wobbeking is unhappy that the Award favors ANICO (rather than Everest, the Party who appointed him to the Panel) and Everest is making a last-ditch scorched-earth attempt to have the Award overturned. However, in the absence of *any* evidence even remotely suggesting that the proceedings were tainted by corruption, fraud, arbitrator misconduct or the like, this Court is bound to resolve this dispute in favor of the Arbitration. Accordingly, ANICO's request for an Order Confirming the Arbitration Award is hereby **GRANTED.**

**IT IS SO ORDERED.**

---

arbitrators only to determine if they were inclined to support the parties that appointed them. However, the Court finds that the evidence does not support this contention. Rather, the evidence shows that Magino circulated drafts of the Award to Moore and Wobbeking for their consideration before its issuance.

4. Magino avers that "[i]n advance of the hearing, all of the panel members received from the parties' counsel, and I reviewed, deposition transcripts, audit reports, expert witness reports, and extensive opening and reply briefs prepared by counsel for the parties. I reviewed and considered all of these materials prior to the hearing, including the audit report prepared for Everest Re by IIAS. The statement in paragraph 52 of the First Amended Cross Application suggesting that I did not review that IIAS report is not true." Moore makes a similar averment regarding his review of the evidence prior to the arbitration.

5. The Court emphatically emphasizes that it does not accept Everest's primary argument that "[t]he Award must be vacated because it was issued without deliberation among the three arbitrators." The Court expressly finds that the evidence shows that meaningful, energetic and comprehensive deliberations (albeit, limited in duration) took place between Magino, Wobbeking and Moore.